Opinion issued April 26, 2007 









Opinion issued April 26, 2007










 

 

 

 




 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-06-00397-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



TOMAS ISRAEL MORENO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 400th District Court

Fort Bend County, Texas

Trial Court Cause No. 40472

 








 



MEMORANDUM OPINION

 

Appellant Tomas Israel Moreno pleaded
not guilty to the third-degree felony offense of possession of marihuana.  See
Tex. Health & Safety Code Ann.
§ 481.121(a), (b)(4) (Vernon 2003).  A jury found Moreno guilty and the trial
court assessed punishment at eight and one-half years’ confinement.  In three
issues, Moreno contends the evidence is legally and factually insufficient to
support his conviction for possession of marihuana, and the trial court abused
its discretion in denying his motion for continuance.  We conclude that the
evidence supports Moreno’s conviction for possession of marihuana, and that the
trial court did not abuse its discretion.  We therefore affirm.

Background

          On July 1, 2004, Houston Police Officer H. Meizel was conducting surveillance of a residence in Missouri City.  Meizel noticed a white Lincoln Town Car parked in the driveway of the
residence.  Meizel ran the Lincoln’s license plate and discovered that it was
registered in Roma, Texas, a small town near the United States-Mexico border,
known to be a source of illegal contraband.  Moreno exited the residence at
around 8:00 a.m. and drove the Lincoln to a small trailer home in Pasadena.  Moreno remained inside the trailer for about an hour and then emerged with Angel
Riviera.  Moreno opened the Lincoln’s trunk and stood by the driver’s door. 
Angel looked inside the trunk but promptly closed it.  Angel then walked to the
street and looked around.  Next, Eric Riviera exited the trailer with a white
box.  Eric placed the white box in the backseat of the Lincoln and got into the
backseat himself as well.  Moreno stood next to the driver’s door when Eric
placed the box in the backseat.  Moreno, Eric, and Angel then drove the Lincoln to Fort Bend County.  

Meizel notified the patrol officers
in the area to watch for the white Lincoln and requested the officers to make a
traffic stop if they observed any traffic violations.  Officer K. Boyett
received this information and saw the Lincoln fail to make a proper stop at an
intersection.  Boyett also noticed that Moreno was not wearing his seatbelt,
and the registration sticker on the Lincoln was expired.  Boyett confirmed the Lincoln’s expired registration, turned on his overhead lights, and stopped the Lincoln in a residential area.  

Moreno was the driver of the Lincoln.  Moreno exited the vehicle
immediately after it stopped.  Boyett asked him to return to the Lincoln and leave his door open.  Boyett approached the Lincoln and asked Moreno for his driver’s license and proof of insurance.  Moreno stated that he did not
have a driver’s license or insurance, he did not own the vehicle, and he did
not know who owned the vehicle.  Moreno later indicated that the Lincoln belonged to Eric or Angel.  Boyett testified that Moreno seemed extremely nervous during the traffic stop and would not make eye contact with
him.  

Boyett smelled marihuana in the Lincoln.  He opened the rear driver’s side door to identify Eric and Angel.  Boyett
immediately noticed the white box in plain view on the backseat directly behind
the driver’s seat.  The box was open and contained a green leafy substance
packaged in clear plastic bags.  Police later confirmed that the box contained
over eight pounds of marihuana.  Meizel testified that eight pounds of
marihuana is a usable quantity.  Officer M. Fulton processed the white box and
the bags of marihuana at the Missouri City Crime Lab but could not find any identifiable
fingerprints on the box or bags.  

Officer S. Luera assisted Boyett
during the traffic stop.  Luera also smelled marihuana in the Lincoln.  

          After the police arrested Moreno, Meizel advised him of his legal rights and questioned him.  Moreno stated that he
did not own the Lincoln and did not know anything about the marihuana.  Moreno stated that he had arrived in Houston the day before on a bus from Roma.  Moreno produced the bus ticket at trial.  Meizel confirmed that the Lincoln was not
registered in Moreno’s name.  

A videotape of the arrest was played
for the jury at trial.  The events in the tape are the same as described by the
officers.  Moreno seemed confused about why he was being arrested, and he asked
the officers what the problem was.  When Boyett told Moreno that the box in the
backseat contained marihuana, Moreno responded, “Naw, for real?”  Moreno repeatedly told the officers that he did not own the Lincoln and he did not know
what was in the box.  Moreno also asked the officers why they did not believe
him.   

Meizel later obtained a search
warrant for the Pasadena trailer.  Inside the trailer, police found two large
scales, a large amount of plastic wrapping, some ledgers, and a small amount of
marihuana, all in plain view.  The plastic wrapping was consistent with the
plastic wrapping found with the marihuana in the Lincoln.  The trailer also
smelled strongly of marihuana.  

          Eric testified that he was
the owner of the white Lincoln, and that Moreno was driving when Boyett made
the traffic stop because he was tired.  Eric also testified that Moreno had no knowledge of the marihuana in the vehicle or in the trailer.  Eric testified
that he was the owner of the marihuana the police found in the Lincoln, and that he packaged it by himself.  Eric testified that he placed the white box
in the Lincoln on the morning of July 1, and the box was already in the Lincoln when Moreno, Angel, and Eric left the trailer.  Eric admitted that the inside of
the Lincoln smelled strongly of marihuana when Boyett made the traffic stop. 
Eric was in prison at the time of trial for an unrelated aggravated robbery
conviction.  

Legal and Factual Sufficiency

In his first and second issues, Moreno contends the evidence is legally and factually insufficient to support his
conviction for possession of marihuana.  

Standard of Review

When evaluating the legal sufficiency of the
evidence, we view the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175
S.W.3d 795, 798 (Tex. Crim. App. 2005).  The standard is the same for both
direct and circumstantial evidence cases.  King v. State, 895 S.W.2d
701, 703 (Tex. Crim. App. 1995).  We do not weigh any evidence, or evaluate the
credibility of any witnesses, as this was the function of the trier of fact.  See
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); Adelman v.
State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex. Crim. App. 1991).  Instead, our duty is to determine
whether both the explicit and implicit findings of the trier of fact are
rational by viewing all the evidence admitted at trial in the light most
favorable to the verdict.  See Adelman, 828 S.W.2d at 422.  In so doing,
any inconsistencies in the evidence are resolved in favor of the verdict.  Matson,
819 S.W.2d at 843.

When conducting a factual sufficiency review, we
view all of the evidence in a neutral light.  Ladd v. State, 3 S.W.3d
547, 557 (Tex. Crim. App. 1999).  We will set aside the verdict only if (1) the
evidence is so weak that the verdict is clearly wrong and manifestly unjust or
(2) the verdict is against the great weight and preponderance of the evidence. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  Under the
first prong of Johnson, we cannot conclude that a verdict is “clearly
wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury.  Watson v.
State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006).  Under the second prong
of Johnson, we cannot declare that a conflict in the evidence justifies
a new trial simply because we disagree with the jury’s resolution of that
conflict.  Id.  Before finding that evidence is factually insufficient
to support a verdict under the second prong of Johnson, we must be able
to say, with some objective basis in the record, that the great weight and
preponderance of the evidence contradicts the jury’s verdict.  Id.  In conducting a factual sufficiency review, we must also discuss the evidence
that, according to the appellant, most undermines the jury’s verdict.  See
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  

We may not re-weigh the evidence and substitute
our judgment for that of the fact-finder.  King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000).  The fact-finder alone determines what weight to
place on contradictory testimonial evidence because that determination depends
on the fact-finder’s evaluation of credibility and demeanor.  Cain v. State,
958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997).  As the determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some,
or none of the testimony presented.  Id. at 407 n.5.

Possession of Marihuana

A person commits the
offense of possession of marihuana “if the person knowingly or intentionally
possesses a usable quantity of marihuana.”  Tex.
Health & Safety Code Ann. § 481.121(a).  The offense of possession
of marihuana is a third-degree felony “if the amount of marihuana possessed is
50 pounds or less but more than 5 pounds.”  Id. § 481.121(b)(4).  “Possession”
means “actual care, custody, control, or management.”  Id. § 481.002(38)
(Vernon Supp. 2006).  Texas Penal Code section 6.03 provides:

(a) A person acts intentionally, or with
intent, with respect to the nature of his conduct or to a result of his conduct
when it is his conscious objective or desire to engage in the conduct or cause
the result.

 

(b) A person acts knowingly, or with
knowledge, with respect to the nature of his conduct or to circumstances
surrounding his conduct when he is aware of the nature of his conduct or that
the circumstances exist.  A person acts knowingly, or with knowledge, with
respect to a result of his conduct when he is aware that his conduct is
reasonably certain to cause the result.

 

Tex.
Pen. Code Ann.
§ 6.03(a)–(b) (Vernon 2003).

Affirmative Links

If the accused did not
exclusively possess the place where the contraband was found, we may not
conclude that the accused had knowledge of and control over the contraband
unless additional independent facts and circumstances affirmatively link the
accused to the contraband.  Poindexter v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); Edwards v. State, 178 S.W.3d 139, 143 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  Factors that may establish an affirmative link
include whether

(1) the contraband was in plain view; (2)
the contraband was conveniently accessible to the accused; (3) the accused was
the owner of the place where the contraband was found; (4) the accused was the
driver of the automobile in which the contraband was found; (5) the contraband
was found on the same side of the car seat as the accused was sitting; (6) the
place where the contraband was found was enclosed; (7) the odor of [the
contraband] was present; (8) paraphernalia to use the contraband was in view of
or found on the accused; (9) conduct by the accused indicated a consciousness
of guilt; (10) the accused has a special connection to the contraband; (11)
occupants of the automobile gave conflicting statements about relevant matters;
(12) the physical condition of the accused indicated recent consumption of the
contraband found in the car; and (13) affirmative statements connect the
accused to the contraband.

 

Gilbert v. State, 874 S.W.2d 290, 298
(Tex. App.—Houston [1st Dist.] 1994, pet. ref’d); see also Edwards, 178
S.W.3d at 143.  Additional factors include whether the defendant was found with
a large amount of cash and whether other contraband or drug paraphernalia were
present.  Olivarez v. State, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  The number of affirmative links present is not as
important as the logical force that they collectively create.  Edwards,
178 S.W.3d at 144; Gilbert, 874 S.W.2d at 298.  We need not consider
affirmative link factors that are absent from the evidence.  Hurtado v.
State, 881 S.W.2d 738, 745 (Tex. App.—Houston [1st Dist.] 1994, pet.
ref’d).

Analysis

Although the evidence suggests that Moreno did not own the Lincoln, we conclude that the applicable affirmative link factors
establish a basis for a rational jury to determine beyond a reasonable doubt
that Moreno knowingly possessed the marihuana in the backseat.  See Batiste v. State, No. 01-04-00460-CR,
2006
WL 2885136, at *4 (Tex.
App.—Houston [1st Dist.] October 12, 2006, no pet.) (contraband
affirmatively linked to defendant where ownership of vehicle was unclear);
Cole v. State,
194 S.W.3d 538, 550–51 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d)
(contraband affirmatively linked to defendant where vehicle was registered
under name of someone other than defendant); Edwards, 178
S.W.3d at 143–44 (holding evidence was sufficient to support finding that
defendant knowingly and intentionally possessed contraband); Gilbert, 874
S.W.2d at 298–99 (holding evidence was sufficient to affirmatively link
defendant to contraband).  

Here, the marihuana was located
directly behind Moreno’s seat in the Lincoln and was contained in an open box
in plain view.  See Poindexter, 153 S.W.3d at 409 n.24 (stating that “affirmative link” exists when contraband is
in plain view or hidden in place tied to accused).  The marihuana was
also conveniently accessible to Moreno.  “The term
‘conveniently accessible’ means that the contraband must be within the close
vicinity of the accused and easily accessible while in the vehicle so as to
suggest that the accused had knowledge of the contraband and exercised control
over it.”  Robinson v. State,
174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).  

Moreno was the driver of the
Lincoln and Boyett, Luera, and Eric testified that the vehicle smelled strongly
of marihuana.  See Batiste, 2006 WL 2885136, at *4 (using odor of burnt
marihuana in vehicle to affirmatively link defendant to contraband).  Moreno’s conduct also indicated a consciousness of his guilt.  Moreno exited the Lincoln immediately after Boyett stopped him for traffic violations.  Boyett testified that
this type of behavior is an indication that a suspect does not want a police
officer near his vehicle.  See Reed v. State,
158 S.W.3d 44, 48 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d) (explaining
that appellant and accomplice established affirmative link by “put[ting] their
heads down to the ground as if they were caught” (alteration in original)).  Boyett
also testified that Moreno seemed extremely nervous during the traffic stop and
would not make eye contact with him.  See Hurtado,
881 S.W.2d at 743 (holding that “appellant’s nervousness and unusual conduct in
the manner of his frequent glances toward the particular place where the contraband
was found” constituted affirmative link).  Additionally, Moreno went inside the Pasadena trailer on the morning of July 1 with Eric and Angel. 
Police later searched the trailer and discovered two large scales, plastic
wrap, ledgers, and some marihuana in plain view.  The inside of the trailer
smelled strongly of marihuana as well.  Moreno was also standing next to the
driver’s door of the Lincoln when Eric entered the vehicle with the marihuana.

Moreno also gave conflicting
statements regarding the owner of the Lincoln.  Initially, Moreno stated that he did not know who owned the Lincoln, but eventually indicated that it
belonged to Eric or Angel.  See Robinson, 174 S.W.3d at 327 (“Such
conflicting statements may help to establish an affirmative link if the
statements themselves, or the inference raised by their inconsistencies,
establish a connection to the appellant’s knowledge of the presence of the
contraband.”).   

We conclude that the record contains legally and
factually sufficient evidence to support Moreno’s conviction for possession of
marihuana.  See
Cole, 194 S.W.3d at 550–51 (holding evidence was
sufficient to support conviction for possession of marihuana); Duvall v. State,
189
S.W.3d 828, 832–33 (Tex. App.—Houston [1st Dist.] 2006, pet. ref’d) (holding evidence was sufficient to support finding
that defendant knowingly and intentionally possessed marihuana). 
While the evidence is conflicting with regard to Moreno’s knowledge and
possession of the marihuana, the jury was entitled to disregard any testimony
that it found not to be credible.  See Cain, 958 S.W.2d at
408–09.  

Viewing the evidence in the light most favorable
to the verdict, we hold that a rational trier of fact could have found beyond a
reasonable doubt that Moreno knowingly possessed more than five pounds of
marihuana.  See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Drichas, 175 S.W.3d at 798; Matson, 819 S.W.2d at 843.  When
viewed in a neutral light, the evidence supporting the jury’s finding is not so
weak that the verdict is clearly wrong and manifestly unjust, nor is the
verdict against the great weight and preponderance of the evidence.  See
Johnson, 23 S.W.3d at 11; Ladd, 3 S.W.3d at 557.  The evidence is
therefore legally and factually sufficient to support Moreno’s conviction for
possession of marihuana. 

Motion for Continuance

          In his third issue, Moreno contends the trial court abused its discretion in denying his motion for
continuance.  The State responds that the trial court did not abuse its
discretion because Moreno failed to demonstrate that the court’s ruling
prejudiced his defense.  The following exchange occurred on the morning of Moreno’s trial after defense counsel filed a written motion for continuance:

[Defense Counsel]: My name is Georgia Fenton.  I
announced ready for trial yesterday morning, but, much to my surprise, I
received a call late in the afternoon that there was a videotape that I had
never been furnished before.  This videotape was in the care and custody of the
prosecutor, Mark Hanna, and I did go down as soon as I could yesterday
afternoon and looked at the videotape.  Unfortunately, parts of it were in
Spanish, and I am not sure if that tape is exculpatory or not.  I have filed
this motion for continuance, because I feel there was unfair surprise in this
case and that an audiotape was not given to me in the time period previously
ordered by the judge.  Under the discovery motion which was heard and granted
on an earlier date, I was supposed to have been furnished all audio and
videotapes.  This was not done, and I have filed this motion for continuance
because of that, and I’d like the case to be continued.

 

[Trial Court]: You want to respond?

 

[Prosecutor]: Your Honor, the State’s response is
that, yes, a videotape was presented to my office by law enforcement yesterday
in this case, 40,472, against Tomas Israel Moreno.  I spoke with Ms. Fenton
yesterday afternoon.  She and I had an opportunity to review the tape in its
entirety late yesterday afternoon, about 4:00 or 4:30, which we both did and
discussed some other issues with the case.  The State does not refute the
contention that there was a discovery order and that this tape wasn’t provided
in compliance with that, and with that failure on my part, I will agree not to
offer the tape for incriminating purposes at this time but do understand that
the Defendant—would not be opposed to any type of short recess so the Defendant
would have an opportunity to review the tape for its exculpatory nature prior
to the Defendant putting on her case.

 

[Trial Court]: And it’s my understanding that a
portion of this tape is in Spanish and a portion of it’s in English, but that
it is a tape of a tape recording, a statement by the Defendant himself.

 

[Prosecutor]: And I will represent that, Judge,
without any objections, that the conversations that took place in Spanish are
between the Defendant and an officer at the scene, and that there are no other
Spanish conversations on there other than the ones that the Defendant was
engaged in.

 

[Trial Court]: And, therefore, I’m going to give the
Defendant time to review the tape with the assistance of Spanish-speaking
persons, interpreters, whoever he or she needs.  It is now 8:43, Wednesday
morning.  We’ll begin jury selection at 9:00 o’clock.  However, I will not
require the Defendant to put on her case until tomorrow morning, so that even
if the State should finish and rest their portion of the case today, I’ll give
the Defendant until tomorrow morning before she needs to put on her case, and
that will give her time to review the tape, see if there’s anything exculpatory
in the Spanish-speaking portion of the tape.  And the State will not be allowed
to introduce the tape during their presentation of the evidence for
incriminating purposes, and it will only be at the Defendant’s request as to
whether or not the tape is actually admitted.  Therefore, I’m going to deny the
motion for continuance.

 

During the State’s case in chief,
defense counsel informed the prosecutor that she would not object to the
admission of the tape.  Defense counsel stated on the record, “I have no
objection, after reviewing the tape, to the State offering that tape into
evidence. . . .  It’s better the jury see it all.”  The prosecutor proved the
authenticity of the videotape using Officer Boyett and then played it for the
jury.       

“The granting or denying
of a motion for continuance is within the sound discretion of the trial
court.”  Renteria v. State, 206
S.W.3d 689, 699 (Tex.
Crim. App. 2006); Heiselbetz
v. State, 906 S.W.2d 500,
511 (Tex. Crim. App. 1995).  A defendant must show
actual and specific prejudice to his defense to establish that the trial court
abused its discretion in refusing to grant a continuance.  Renteria, 206
S.W.3d at 699; Vasquez v. State, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002); Heiselbetz, 906
S.W.2d at 511–12.  Specific prejudice may
include unfair surprise, an inability to effectively cross-examine the State’s
witnesses, or the inability to adduce crucial testimony that could have been
given by potential witnesses.  See Janecka v. State, 937 S.W.2d 456, 468
(Tex. Crim. App. 1996).  An assertion that counsel did not have
enough time to prepare an adequate defense does not demonstrate specific
prejudice.  See Renteria, 206
S.W.3d at 702; Janecka, 937 S.W.2d
at 468; Heiselbetz, 906 S.W.2d at 512.

Here, Moreno asserts that he was specifically prejudiced by the denial of the continuance because he
was unfairly surprised, unable to effectively cross-examine the State’s
witnesses, and unable to adduce crucial testimony that could have been
given by potential witnesses.  Moreno, however, presented no
evidence as to how or why the denial of the continuance specifically prejudiced
his defense.  The mere assertion that the denial of a continuance resulted in
unfair surprise, or rendered defense counsel unable to cross-examine witnesses
or adduce crucial testimony is insufficient to demonstrate actual and specific
prejudice.  See, e.g., Renteria,
206
S.W.3d at 702 (holding that defendant did not demonstrate
specific prejudice from denial of continuance based on bare assertions of
inadequate time to prepare for trial); Vasquez, 67 S.W.3d at 240–41
(holding defendant failed to demonstrate he was prejudiced by trial court’s
denial of his motion for continuance); Janecka, 937 S.W.2d
at 468 (holding that assertion of inadequate time to prepare defense does not
establish specific prejudice necessary to find abuse of discretion in denying
motion for continuance); Heiselbetz, 906 S.W.2d at 512 (holding that bare
assertion that counsel did not have enough time to interview potential
witnesses does not alone establish prejudice).  

Additionally, defense
counsel watched the videotape in its entirety the day before the trial and
specifically asked the prosecutor to introduce the videotape as evidence against
 Moreno.  The trial court had ruled that the tape could not be introduced
unless defense counsel allowed it.  Moreno cannot demonstrate unfair surprise
when his counsel specifically asked the prosecutor to introduce the videotape
as evidence against him.  See Vasquez, 67 S.W.3d at 240–41
(holding that defendant failed to demonstrate unfair surprise when he should
have anticipated co-defendant becoming witness for State at trial).  Absent a
showing of actual and specific prejudice, we conclude that the trial court did
not abuse its discretion by denying Moreno’s motion for continuance.  See Renteria, 206
S.W.3d at 699; Vasquez, 67 S.W.3d at 240; Heiselbetz, 906
S.W.2d at 512.  

Conclusion

          We hold that the evidence
is legally and factually sufficient to support Moreno’s conviction for
possession of marihuana, and the trial court did not abuse its discretion in
denying Moreno’s motion for continuance.  We therefore affirm the judgment of
the trial court.

 

                                                                    Jane Bland

                                                                    Justice

 

Panel consists of Chief Justice
Radack and Justices Jennings and Bland.

Do not publish.  Tex. R. App. P. 47.2(b).