**Joseph Isaac BATISTE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–04–00460–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 12, 2006.

---

Andrew Lee Payne, Sunny L. Kapungu, Danny Karl Easterling, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney–Harris County, Donald W. Rogers Jr., Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

The State charged appellant, Joseph Isaac Batiste, with possession of methamphetamine, in an amount greater than one gram but less than four. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.116(c) (Vernon 2003). A jury found him guilty and sentenced him to five years' imprisonment. On appeal, Batiste contends (1) the evidence is legally insufficient to sustain his conviction; (2) the trial court erred in allowing extraneous offense evidence; and (3) if error was not preserved as to the extraneous offense evidence, then Batiste received ineffective assistance of counsel at trial. We affirm.

## Facts

In November 2003, Officer Mike Robinson, a member of the Harris County Sheriff's Department's narcotics and gang task force, stopped a black Nissan for speeding. Robinson radioed his partner, Terry Jackson, to assist with the stop, and Jackson arrived just as Robinson pulled the vehicle over. As he approached the driver's side door of the vehicle, Robinson smelled burning marihuana. Three people occupied the car: Batiste, in the front passenger's seat; Nikea Haynes, Batiste's fiancée, in the driver's seat; and Octavia Whitaker, Batiste's sister, in the backseat. Robinson observed that Haynes had bloodshot eyes, slurred speech, and her breath smelled of alcohol. Haynes testified that she had consumed no alcohol that night, and that the police never inquired whether she was intoxicated. While Robinson approached the driver's side of the vehicle, Jackson approached the passenger's side. Because the widows were tinted, Jackson used his flashlight to view the inside of the vehicle. He observed an empty bottle of brandy in the backseat, some sandwich bags, and a large quantity of cigars. He testified that it was unusual for someone to drive around with an open container of sandwich bags and a large quantity of cigars, and that the presence of these items suggested marihuana use.

After Jackson told Robinson that he had observed an open bottle of alcohol in the backseat, Robinson asked Haynes to exit the car so he could perform a field sobriety test. Robinson opened the driver's door and observed an open Phillies cigar box containing eight altered cigars in the door panel. Altered cigars typically contain marihuana, and are known as "blunts." Robinson testified that based on Haynes's proximity to the drugs, he decided to forgo a DWI investigation and focus instead on the drugs. Robinson asked Haynes if the vehicle belonged to her, and she replied that it belonged to Batiste. He then placed Haynes in the backseat of his patrol car.

Jackson then removed Batiste from the car to question him because Batiste smelled of marihuana. Jackson asked Batiste who owned the vehicle, and Batiste replied that he was using it. In contrast, Haynes testified that when Jackson asked who owned the car, Batiste replied that it belonged to a friend. Robinson testified that Batiste never denied ownership of the vehicle. Jackson patted Batiste down for weapons and discovered $120 in cash in his pocket, in denominations of $5. Jackson testified that dealers typically sell blunts and Xanax pills for $5 each. Jackson asked for consent to search the car, which Batiste granted.

In the trunk, Robinson discovered eighty grams of marihuana, individually packaged for sale in clear plastic sandwich bags. Robinson estimated the street value of the marihuana at about $300. Jackson searched the passenger compartment of the vehicle and discovered two unmarked pill bottles in the center console. Jackson recognized the contents of one of the bottles as ecstasy, a street form of methamphetamine, and the other as Xanax, a commonly abused prescription drug. Jackson performed a chemical field test on the

ecstasy pills. They tested positive for methamphetamine and cocaine—two common ingredients of ecstasy. Shrey Reach, a forensic chemist for the Harris County Medical Examiner Controlled Substance division, also testified that the six pills tested positive as ecstasy. Based on the smell of marihuana, the denominations of money in his pocket, and his claim of possession of the vehicle, Jackson believed that the ecstasy pills belonged to Batiste.

Whitaker testified that she had arranged for Haynes to take her to the mall that evening, and that Batiste decided to accompany them at the last minute. Haynes decided to drive the black Nissan. Haynes and Whitaker testified that they had never seen the Nissan at Batiste's house before that evening. Whitaker did not notice the cigars or any drugs when she entered the car. Whitaker and Haynes testified that police officers pulled them over on the way to the mall, but that after one officer looked at Haynes's driver's license, he told them they could go. One of the officers flashed his flashlight in the backseat and asked what all the cigars were for. At that point, the officers removed them all from the vehicle and asked Batiste if they could search the car.

Haynes testified that the Nissan belonged to Batiste's friend Roderick Fruellem. Haynes asked Batiste if Fruellem would mind if she used the car, and Batiste responded that he did not think so. Haynes testified that she wanted to drive the car because it had expensive rims, and she wanted to see how the car drove on those wheels.

Fruellem testified that the Nissan belonged to him, and that the car's registration was in his name. Jackson and Robinson both testified that the name under which a vehicle is registered does not demonstrate ownership, and that possession is a more appropriate indication of who owns

the vehicle. Fruellem testified that around the time of the incident he was trying to sell his vehicle. A friend had borrowed the car for a couple days to see if he liked it, but after the friend told Fruellem that he did not wish to purchase the car, Fruellem instructed him to drop the vehicle off at Batiste's house because Batiste was interested in purchasing a vehicle. According to Fruellem, the vehicle was taken to Batiste's house the day of the incident.

## Legal Sufficiency

In his first issue, Batiste contends the evidence is legally insufficient to sustain his conviction because the State has failed to provide the "affirmative links" necessary to demonstrate that the narcotics belonged to him. Specifically, Batiste contends (1) no one witnessed him handle the pills; (2) the two other passengers in the vehicle had the same access to the contraband that he did; (3) no evidence suggests that he was under the influence; (4) he did not exercise control over the other contraband discovered in the vehicle; (5) he did not make incriminating statements, furtive gestures, or attempt to flee; and (6) he did not own the car but had simply borrowed it from a friend.

### Standard of Review

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App.2005). The standard is the same for both direct and circumstantial evidence cases. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim.App.1999). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this was the function of the trier of fact. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Instead, our duty is to determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *See Adelman*, 828 S.W.2d at 421–22. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843. In circumstantial evidence cases such as this, it is unnecessary for every fact to point directly and independently to appellant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim. App.1993); *Russell v. State*, 665 S.W.2d 771, 776 (Tex.Crim.App.1983).

### Analysis

A person commits third-degree felony possession of methamphetamine if he knowingly or intentionally possesses the controlled substance in an amount greater than one gram and less than four grams. TEX. HEALTH & SAFETY CODE ANN. § 481.116(c). In order to establish the offense of unlawful possession of a controlled substance, the State must show that the accused (1) exercised care, control, or management over the contraband and (2) knew that he possessed contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App.2005); *Edwards v. State*, 178 S.W.3d 139, 143 (Tex.App.-Houston [1st Dist.] 2005, no pet.). If the accused does not exclusively possess the place where the contraband is found, we may not conclude that the accused had knowledge of and control over the contraband unless additional independent facts

and circumstances affirmatively link the accused to the contraband. *Poindexter*, 153 S.W.3d at 406; *Edwards*, 178 S.W.3d at 143. It is not sufficient to show the defendant was merely present in the vicinity of the controlled substance. *De La Garza v. State*, 898 S.W.2d 376, 379 (Tex. App.-San Antonio 1995, no pet.). Factors that may establish an affirmative link include whether:

1) the contraband was in plain view; 2) the contraband was conveniently accessible to the accused; 3) the accused was the owner of the place where the contraband was found; 4) the accused was the driver of the automobile in which the contraband was found; 5) the contraband was found on the same side of the car seat as the accused was sitting; 6) the place where the contraband was found was enclosed; 7) the odor of [the contraband] was present; 8) paraphernalia to use the contraband was in view of or found on the accused; 9) conduct by the accused indicated a consciousness of guilt; 10) the accused has a special connection to the contraband; 11) occupants of the automobile gave conflicting statements about relevant matters; 12) the physical condition of the accused indicated recent consumption of the contraband found in the car; and 13) affirmative statements connect the accused to the contraband.

*Gilbert v. State*, 874 S.W.2d 290, 298 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd); *see also Edwards*, 178 S.W.3d at 143. Additional factors include whether the defendant was found with a large amount of cash and whether other contraband or drug paraphernalia were present. *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.-Houston [14th Dist.] 2005, no pet.). The number of affirmative links present is not as important as the logical force that they collectively create. *Edwards*, 178 S.W.3d at 144; *Gilbert*, 874 S.W.2d at 298.

We need not consider affirmative link factors that are absent from the evidence. *Hurtado v. State*, 881 S.W.2d 738, 745 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd).

Viewed in a light most favorable to the verdict, and applying the above factors, we conclude the evidence is legally sufficient to affirmatively link Batiste to the ecstasy. The cigars and plastic baggies were in plain view in the backseat of the car, and according to Robinson, the blunts were in plain view in the door panel once the door was opened; thus Batiste should have been aware of their presence in the vehicle. The ecstasy and Xanax pills were discovered in the center console, an enclosed place easily accessible to Batiste. *See Poindexter*, 153 S.W.3d at 409 n. 24 (stating that "affirmative link" exists when contraband is in plain view or hidden in place tied to accused).

Though it is unclear whether Batiste actually owned the vehicle, viewed in a light most favorable to the prosecution, the evidence indicates that Batiste was in care, custody, and control of the vehicle before and at the time of the incident. Robinson testified that Haynes told him the vehicle belonged to Batiste. Jackson testified that Batiste told him the vehicle was his. Robinson further testified that Batiste never denied ownership of the vehicle. In addition, Haynes testified that she asked Batiste if she could drive the vehicle that evening, and Fruellem testified that he had had the car delivered to Batiste's house so Batiste could drive it to determine if he wanted to purchase it. Batiste contends the car was registered to Fruellem, and therefore that Fruellem controlled the vehicle. Jackson and Robinson testified, however, that possession is a stronger indication of control than registration because cars are often registered under names other than their owner's

name. *See Cole v. State,* 194 S.W.3d 538, 550–51 (Tex.App.-Houston [1st Dist.] 2006, pet. ref'd) (contraband affirmatively linked to defendant where vehicle was registered under name of someone other than defendant).

In addition, police discovered other contraband in the vehicle. Robinson testified that he smelled burning marihuana immediately as he approached the vehicle. Jackson testified that Batiste smelled like burnt marihuana. Robinson discovered eight blunts in the driver's side door, and Jackson discovered a bottle of Xanax pills in the center console, and eighty grams of marihuana in the trunk. We may consider appellant's possession of other contraband when arrested in assessing the force of the affirmative links. *See Chavez v. State,* 769 S.W.2d 284, 288 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd). In this case, the profusion of contraband found in the vehicle increases the probability that Batiste was aware of its presence. This probability is furthered by the fact that Batiste had $120 in his pocket in denominations of $5, which Jackson testified was consistent with selling blunts and Xanax pills for $5 apiece.

Accordingly, we conclude the evidence is legally sufficient to sustain Batiste's conviction.

## Extraneous Offense

In his second issue, Batiste contends the trial court erred in admitting evidence of marihuana found in the trunk of the car at the guilt stage of trial because it is evidence of an extraneous offense. The State contends Batiste failed to preserve error on this issue for appeal. We agree.

During direct examination, Officer Robinson testified that he found a plastic bag containing possibly eighty grams of individually packaged marihuana in the trunk of the car in which Batiste was a passenger. Immediately after Robinson stated his findings, Batiste's counsel objected by stating, "And I would object. There's no relevance to that manner [sic] as to this case." The trial court overruled the objection and continued Robinson's direct examination regarding details of the items found in the trunk of the car. Batiste's counsel made no further objections to the testimony regarding the extraneous offense. The record is entirely void of any objections based upon Texas Rule of Evidence 404(b) regarding the admission of extraneous offense evidence.

To preserve an issue for appeal, a party must timely object, stating the specific legal basis. TEX.R.APP. P. 33.1(a)(1); *Rhoades v. State,* 934 S.W.2d 113, 121, 127 (Tex.Crim.App.1996). "To be timely, an objection must be raised at the earliest opportunity or as soon as the ground of objection becomes apparent." *Penry v. State,* 903 S.W.2d 715, 763 (Tex. Crim.App.1995). An objection stating one legal theory may not be used to support a different legal theory on appeal. *Medina v. State,* 7 S.W.3d 633, 643 (Tex.Crim.App. 1999) (holding appellant's relevancy objection at trial did not preserve error concerning Rule 404 extraneous offense claim); *Camacho v. State,* 864 S.W.2d 524, 533 (Tex.Crim.App.1993) (holding appellant's hearsay and relevancy objections did not address correct evidentiary basis for exclusion of extraneous offense testimony). The issue raised on appeal should comport with the objection made at trial, and the trial judge should have an opportunity to rule on the issue—otherwise nothing is presented for appellate review. *Johnson v. State,* 803 S.W.2d 272, 292 (Tex.Crim. App.1990) (holding appellant failed to make proper objection at trial regarding admission of extraneous offense evidence), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.

1991). However, "where the correct ground of exclusion [i]s obvious to the judge and opposing counsel, no waiver results from a general or imprecise objection." *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App.1977); *see Massey v. State,* 933 S.W.2d 582, 586–87 (Tex.App.-Houston [1st Dist.] 1996, no pet.) (holding appellant's objection that testimony was "getting into extraneous offenses" was sufficient objection under Rule 404(b)).

Here, as soon as Robinson testified that he found marihuana in the trunk of the car, Batiste's trial counsel objected as to relevancy. His trial counsel, however, never objected that the testimony should be excluded as extraneous offense evidence under Rule 404(b). Nothing in the record indicates that the correct ground of exclusion was obvious to the trial judge or opposing counsel. As in *Camacho* and *Johnson,* the proper legal basis for appellant's trial objection "should have been that the evidence was offered to prove an extraneous uncharged offense not within the permissible scope of Rule 404(b) and was offered to show that appellant was a criminal generally." *Camacho,* 864 S.W.2d at 533 (citing *Johnson,* 803 S.W.2d at 292). Since Batiste's objection did not address the correct evidentiary basis for exclusion, which in turn did not afford the trial judge an opportunity to rule on the issue, this argument has not been preserved for appeal. Accordingly, we hold that the objection made by Batiste's trial counsel was insufficient to preserve error for appellate review.

## Ineffective Assistance of Counsel

In his third issue, Batiste contends that if error was not preserved as to the admission of extraneous offense evidence, then his counsel was ineffective for failing to properly object or request a limiting instruction, and for failing to object to the State's insinuation during closing argument that he sold drugs to children.

### Standard of Review

■ To show ineffective assistance of counsel, a defendant must demonstrate both (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984); *Andrews v. State,* 159 S.W.3d 98, 101–02 (Tex.Crim.App.2005). A defendant has the burden to establish both of these prongs by a preponderance of the evidence, and a failure to make either showing defeats his ineffectiveness claim. *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim.App.2002). We presume that counsel's conduct falls within the wide range of reasonable professional assistance, and we will find counsel's performance deficient only if the conduct is so outrageous that no competent attorney would have engaged in it. *Andrews,* 159 S.W.3d at 101. We cannot speculate beyond the record provided, so any allegation of ineffectiveness must be firmly founded in the record, and the record affirmatively must demonstrate the alleged ineffectiveness. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999).

### Analysis

Robinson testified that upon initiating contact with Haynes, he smelled burnt marihuana and alcohol. He also observed eight altered, marihuana filled cigars, or blunts, in the driver's side door of the vehicle. Robinson then testified, without objection, that, based on his experience, altered cigars are often filled with marihuana. After Robinson testified that he discovered eighty grams of marihuana in the trunk of the car, the State elicited

further testimony regarding the marihuana found in the vehicle without objection.

Jackson testified, without objection, to discovering the Xanax pills along with the ecstasy pills in the center console of the vehicle. During cross-examination, Batiste's counsel elicited testimony from Jackson regarding the marihuana smell Robinson observed, the marihuana Robinson discovered in the driver's side door, the marihuana Robinson discovered in the trunk, and the Xanax.

During the State's closing arguments, Batiste's counsel twice objected to the State's reference to the Xanax as being irrelevant because Batiste had not been charged with possession of Xanax. The trial court overruled all of Batiste's counsel's relevance objections related to the marihuana and Xanax discovered in the vehicle.

■■■ In most cases, the undeveloped record on direct appeal will be insufficient to satisfy the dual prongs of *Strickland* because the reasonableness of counsel's decisions often involves facts not appearing in the appellate record. *Rylander v. State,* 101 S.W.3d 107, 110 (Tex.Crim.App.2003). Therefore, it is critical that the defendant obtain the necessary record in the trial court to rebut the *Strickland* presumption that counsel's conduct was strategic. *Thompson,* 9 S.W.3d at 814; *McCullough v. State,* 116 S.W.3d 86, 92 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). This kind of record is best developed in a hearing on a motion for new trial, or by application for a writ of habeas corpus. *See Jackson v. State,* 973 S.W.2d 954, 957 (Tex.Crim.App.1998); *McCullough,* 116 S.W.3d at 92. Without evidence of the strategy and methods involved concerning counsel's actions at trial, the appellate court will presume sound trial strategy. *See Thompson,* 9 S.W.3d at 814.

■■■ The record in this case is undeveloped and does not adequately reflect the motives behind trial counsel's actions with regard to the relevancy objections to the extraneous offense evidence, or the lack of an objection to the State's insinuation during closing that Batiste sold drugs to children. Batiste did not move for a new trial, and the reasons for his counsel's acts and omissions are not clear from the record. Failure to object to inadmissible extraneous offense evidence can constitute a plausible trial strategy. *Heiman v. State,* 923 S.W.2d 622, 626 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). Thus, we must presume trial counsel had plausible reasons for her actions. *See Ex parte Varelas,* 45 S.W.3d 627, 632 (Tex.Crim.App. 2001) (reviewing court may not speculate as to why trial counsel failed to request limiting instruction when record is silent, even if court has difficulty understanding counsel's inaction).

■■■ However, as Batiste observes, a strategic explanation for counsel's failure to object properly to the extraneous offense evidence is unlikely, given her objections that the evidence was irrelevant; i.e., she attempted to exclude the evidence from the jury's consideration. Though we presume that counsel's actions may have been strategically motivated, we agree that, in this case, it is difficult to extract any strategy from counsel's failure to lodge the proper objections after acknowledging, through improper relevance objections, the harm in admitting evidence of the marihuana and Xanax discovered in the vehicle. *See Andrews,* 159 S.W.3d at 102 ("when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as she did").

Because a presumption of strategy in this case is somewhat tenuous, we address harm under the second prong of *Strickland.*

Accordingly, we determine whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 101. Extraneous acts are generally inadmissible at the guilt/innocence stage of a trial. *See* TEX.R. EVID. 404(b) (stating that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith"). An extraneous offense, however, has noncharacter-conformity relevance when it has any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *Powell v. State,* 63 S.W.3d 435, 438 (Tex.Crim.App. 2001). "Same transaction contextual evidence" may be admissible, for example, "only if the facts and circumstances of the instant offense would make little or no sense without also bringing in the same transaction contextual evidence." *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Crim.App. 1993); *Heiman,* 923 S.W.2d at 625. The reason the "same transaction contextual evidence" is admissible "is simply because in narrating the one it is impracticable to avoid describing the other." *Heiman,* 923 S.W.2d at 625 (citing *Rogers,* 853 S.W.2d at 33).

Here, evidence that police officers smelled marihuana, and found marihuana in the driver's side door of the car, would likely have been admissible under *Rogers,* because the police officers' search of the vehicle, and discovery of the ecstasy in the center console of the vehicle, would have made little or no sense without their explanation that the discovery of the marihuana gave them a basis for the search. Similar-ly, whether Batiste was in care, control, or management of the ecstasy was a fact of consequence that was made more likely under the "affirmative links" analysis by the fact that Batiste was also in possession of marihuana and Xanax, thus increasing the possibility that the trial court would have deemed the evidence admissible even in the face of a Rule 404(b) objection. *See Poindexter,* 153 S.W.3d at 406. Because at least some of the uncharged contraband discovered in Batiste's vehicle would have been admissible, we cannot say that the result of the proceeding would have been different if counsel had objected or requested a limiting instruction. Accordingly, we hold that Batiste has failed to satisfy the second prong of *Strickland.*

### Conclusion

We hold that (1) the evidence is legally sufficient to affirmatively link Batiste to the charged contraband, (2) Batiste failed to preserve error as to the admissibility of extraneous offense evidence, (3) Batiste failed to satisfy the first prong of *Strickland* with regard to the State's insinuation during closing arguments that he sold drugs to children, and (4) Batiste failed to satisfy the second prong of *Strickland* with regard to defense counsel's improper objections to the extraneous offense evidence. We therefore affirm the judgment of the trial court.