Opinion issued March 27, 2008 
 




                                            




In The
Court of Appeals
For The
First District of Texas





NO. 01-07-00208-CR





MARSHALL ALAN DEWBRE, Appellant

V.

STATE OF TEXAS, Appellee
 






 
 
On Appeal from the 232nd District Court
Harris County, Texas
Trial Court Cause No. 1100895
 






 
MEMORANDUM OPINION

          After finding appellant Marshall Alan Dewbre guilty as charged on one
count of impersonating a public servant and true on an enhancement paragraph, the
jury assessed a sentence of fourteen years’ imprisonment. See Tex. Penal Code
Ann. § 37.11(a)(1) (Vernon 2003). The enhancement paragraph consisted of a
prior conviction for arson in the State of Oklahoma. In this appeal, appellant
contends that the evidence was legally and factually insufficient to support
conviction on the count of impersonating a public servant because: (1) the record
contains no evidence that he identified himself as a public servant to the person
named in the indictment; (2) his actions did not affect that person’s behavior; and
(3) he did not wear a uniform or display any equipment used in law enforcement. 
Finding sufficient evidence, we affirm.
Background 
          In April 2005, Dewbre and his family went to a Whataburger restaurant one
Saturday evening for dinner. While waiting to order, Dewbre noticed a few
teenagers going back and forth between a car and a nearby liquor store. He also
noticed one teenager, later identified as Anthony Forbes, going back and forth
between a car and the parking lot dumpster, and handing little packets to some
teenagers in the car. His suspicion aroused, Dewbre telephoned a 911 operator
and, identifying himself as “Alan,” reported the activity as possible drug dealing. 
          While waiting for the police to arrive, Dewbre stood directly behind the car
in which Forbes was sitting, preventing its occupants from leaving the parking lot. 
Dewbre then flagged down Harris County Sheriff’s Deputy Tamez when he arrived
at the scene. Dewbre told Tamez that he was a Precinct 4 constable on medical
leave due to a leg injury. Dewbre then informed Tamez about the activity he
observed. Based on Dewbre’s behavior and demeanor, Tamez believed Dewbre’s
representation and did not ask to see his badge or other identification. 
          After Tamez obtained consent to search the car, he had all of the occupants,
including Forbes, step outside. Forbes testified that he overheard Dewbre tell
Tamez “I’m a cop,” or something to that effect, while Forbes was standing outside
the vehicle. As Tamez searched the car, Dewbre stayed behind the car with Forbes
and the other passenger. Dewbre conducted a pat-down search of Forbes and had
Forbes place his hands on the trunk while he searched the inside of Forbes’s
pockets.
          Tamez discovered a small amount of marijuana and a pipe during the vehicle
search, and Forbes admitted that both were his. Tamez learned that Forbes was a
student at Langham Creek High School and had obtained the marijuana from
another student there. Tamez asked Forbes to identify that student, but Forbes
could not recall his full name. Dewbre and Tamez discussed the matter further and
agreed not to charge or arrest Forbes. Tamez, however, directed Forbes to identify
the marijuana supplier to school officials on Monday morning.
          The following Tuesday, Dewbre called the high school and spoke with
Assistant Principal Kristi Giron. Dewbre told Giron that he was a police officer
and had arrested four students on Saturday night, one of whom was in possession
of a narcotic. Giron recognized Dewbre’s voice because she had spoken with him
many times concerning his two stepchildren, who were students in the special
education program. Skeptical of Dewbre’s representation, Giron asked Dewbre
whether he was a police officer “probably a total of three times” during the course
of the conversation, and he responded in the affirmative each time. After Giron
told Dewbre that, to her knowledge, Forbes had not reported the incident, Dewbre
asked for Forbes’s home address so he could talk to Forbes’s parents. 
          Dewbre informed Giron that Forbes had agreed, at Dewbre’s request, to
participate in a drug bust at the school. Giron explained that they did not allow
such activity on campus. Following her telephone conversation with Dewbre,
Giron discussed the matter with Associate Principal Carolyn Williams. Williams
told Giron that Dewbre had served warrants, but was not a police officer. Williams
encouraged Giron to tell the campus police officer about her discussion with
Dewbre. 
          Later that same evening, Dewbre drove to Forbes’s house. When Forbes’s
father answered the door, Dewbre told him that he wanted to speak with Forbes. 
The father asked Dewbre for identification, but Dewbre did not provide any. 
Instead, Dewbre responded that he served warrants. When Forbes came to the
door, Dewbre began to question him. Dewbre instructed Forbes to report the
person who supplied him with the marijuana, told Forbes that Dewbre could find
out whether Forbes made the report, and threatened Forbes that he would be
arrested if he did not.
          The next day, Giron spoke with Precinct 4 Deputy Constable Foty, the
campus police officer at the high school, about her telephone conversation with
Dewbre. Foty decided to investigate Dewbre’s conduct, and had Giron telephone
Dewbre while he listened in on the conversation. Giron asked Dewbre for
information concerning his purported official status. In response, Dewbre became
very belligerent and angry, denied that he ever identified himself as a police
officer, and claimed that he only served warrants. When Dewbre sensed that Giron
was suspicious, he told her that he would “just ruin [Forbes’s] career” by
prosecuting him for the past Saturday’s events.



          A few days later, Dewbre went to a Harris County Sheriff’s Department
substation to speak with Tamez. Dewbre explained that he was having problems
with Foty, who was alleging that Dewbre had identified himself to Tamez as a
sheriff. Still under the impression that Dewbre was a public servant, Tamez
responded that Dewbre had identified himself as a Precinct 4 constable, not a
sheriff. 
          Soon afterward, Dewbre was arrested and charged. Following trial,
conviction, and sentencing, Dewbre timely appeals.
Discussion
          Dewbre contends that the evidence is legally and factually insufficient to
support the jury’s finding that Dewbre impersonated a public servant.
I.       Standards of Review
          When evaluating the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the prosecution and determine whether any rational
fact-finder could have found the essential elements of the offense beyond a
reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). The
standard is the same for both direct and circumstantial evidence cases. King v.
State, 895 S.W.2d 418, 421 (Tex. Crim. App. 1992). We do not resolve any
conflict of fact, weigh any evidence, or evaluate the credibility of witnesses, as this
was the function of the fact-finder. See Adelman v. State, 828 S.W.2d 418, 421
(Tex. Crim. App. 1992); Batiste v. State, 217 S.W.3d 74, 79 (Tex. App—Houston
[1st Dist.] 2006, no pet.). Instead, our duty is to determine whether both the
explicit and implicit findings of the fact-finder are rational by viewing all the
evidence admitted at trial in the light most favorable to the verdict. See Adelman,
828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in
favor of the verdict. Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App.
1988).  
          When conducting a factual sufficiency review, we view all of the evidence
in a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We
will set the verdict aside only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the verdict is against the great weight
and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). Under the first prong of the Johnson, we cannot conclude that a
conviction is “clearly wrong” or “manifestly unjust” simply because, on the
quantum of evidence admitted, we would have voted to acquit if we had been the
fact-finder. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under
the second prong of Johnson, we cannot declare that a conflict in the evidence
justifies a new trial simply because we disagree with the fact-finder’s resolution of
that conflict. Id. Before finding that evidence is factually insufficient to support a
verdict under the second prong of Johnson, we must be able to say, with some
objective basis in the record, that the great weight and preponderance of the
evidence contradicts the verdict. Id. In conducting a factual sufficiency review,
we must also discuss the evidence that, according to appellant, most undermines
the verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
          Although we may disagree with the jury’s determination, even if probative
evidence supports the verdict, we may not substitute our judgment for that of the
fact-finder when conducting a factual sufficiency review. King, 29 S.W.3d at 563. 
Only the fact-finder may determine what weight to place on contradictory
testimonial evidence, for that determination depends on the fact-finder’s evaluation
of credibility and demeanor. Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim.
App. 1997). As the determiner of the credibility of the witnesses, the fact-finder
may choose to believe all, some, or none of the testimony presented. Id. at 407 n.5.
II.      Impersonating a Public Servant 

          Section 37.11(a)(1) of the Penal Code provides that “[a] person commits an
offense if he impersonates a public servant with intent to induce another to submit
to his pretended official authority or to rely on his pretended official acts.”


 Tex.
Penal Code Ann. § 37.11(a)(1). The trial court instructed the jury:
If you find from the evidence beyond a reasonable doubt that the
defendant, Marshall Alan Dewbre, in Harris County, Texas, on or
about the 30th day of April, 2005, did then and there unlawfully,
intentionally impersonate a public servant, namely, a peace officer,
from Harris County Constable’s Office Precinct Four, with intent to
induce Anthony Forbes to submit to his pretended official authority or
to rely on his pretended official acts, by reporting that he was a
Deputy constable or by detaining Anthony Forbes or by searching
Anthony Forbes, then you will find the defendant guilty as charged in
the indictment.

To support the conviction, therefore, the State needed to prove beyond a reasonable
doubt that Dewbre committed with the requisite intent any one of the three acts
described in the indictment.


 
III.     Sufficiency of Evidence
          A.      Legal sufficiency 
Dewbre asserts that the evidence is legally insufficient to support conviction
because he identified himself as a constable to Tamez, not Forbes, and Tamez is
not named in the indictment as the person who relied on Dewbre’s impersonation. 
A conviction under section 37.11, however, does not require that the defendant
identify himself as a public servant directly to each person he intends to induce to
submit to his pretended official authority or to rely on his pretended official acts. 
See Dietz v. State, 62 S.W.3d 335, 340–41 (Tex. App.—Austin 2001, pet. ref’d). 
          In Dietz, a bail enforcement agent falsely identified himself as a public
servant to a police officer and an occupant of an apartment in which the agent
suspected a fugitive was hiding. Id. at 336–38. The defendant claimed that the
evidence at trial fatally varied from the indictment because the evidence showed
that he identified himself as a police officer to only two of the four persons named
in the indictment. Id. at 339. The court of appeals disagreed, determining that the
evidence supported a finding that, by initially identifying himself as a sheriff’s
deputy to a police officer and the apartment occupant, the defendant intended to
induce everyone in the apartment to submit to his pretended official authority. Id.
at 340. As a result, the court concluded, it was immaterial that the defendant did
not explicitly inform the backup officer and a guest at the apartment that he was a
government official. Id. 
          We agree with this construction of section 37.11(a)(1). The jury could
convict Dewbre of impersonating a public servant if it found beyond a reasonable
doubt that Dewbre identified himself as a constable to Tamez with the intent to
induce Forbes, as well as Tamez, to submit to his pretended official authority or to
rely on his pretended official acts. Forbes testified that he was standing within
earshot of Dewbre and Tamez, and heard Dewbre tell Tamez that he was an officer. 
Shortly after he heard Dewbre state that he was a constable, Forbes further
recounted, he submitted to a pat-down search by Dewbre. This evidence is legally
sufficient to support a finding that Dewbre intended to induce Forbes to submit to
his pretended official authority. 
          Dewbre also contends that the evidence does not support his conviction
because his misrepresentation of authority to Tamez “did not cause Forbes to
behave differently than he would have if Dewbre had merely said that he was a
concerned parent.” Forbes’s behavior is irrelevant to whether the evidence is
sufficient to support Dewbre’s conviction. Section 37.11(a)(1) does not require
proof that the defendant succeeded “in actually inducing anyone to submit to or
rely on his assumed authority; all that is required is the impersonation and the
intent.” Id. In other words, the statute requires only that the defendant have the
intent to impersonate a public servant; whether anyone actually relied on that
impersonation is irrelevant.


 See Tex. Penal Code Ann. § 37.11(a)(1). Viewing
the evidence in the light most favorable to the verdict, we conclude that a rational
jury could find beyond a reasonable doubt that Dewbre impersonated a peace
officer by reporting to Tamez that he was a Precinct 4 Constable, with the intent to
induce Forbes to submit to his pretended official authority. 

B.      Factual sufficiency
Dewbre attacks the factual sufficiency of the evidence on the grounds that he
was not wearing a uniform, did not display any badge, light, or siren, and did not
carry a weapon. Although the use of props may make a defendant’s impersonation
more convincing in some circumstances, the defendant’s skill or persuasiveness is
irrelevant, and the statute does not limit “impersonation” to the use of any
particular method. 
          Dewbre contends that Tamez’s testimony that he did not see Dewbre search
Forbes undermines Forbes’s testimony concerning the search. We disagree. 
Tamez’s testimony does not contradict Forbes’ account of the search, and Tamez
explained that he could not see the search taking place at the back of the car
because he was searching the inside of the car at the time. 
          Much of the evidence presented at trial was hotly contested. We defer to the
jury’s evaluation of the witnesses’ credibility and demeanor in resolving these
disputes. See Cain, 958 S.W.2d at 408–09.  Viewing the evidence in a neutral
light, we conclude that the jury was rationally justified in finding Dewbre guilty of
impersonating a peace officer beyond a reasonable doubt. 

Conclusion
          We conclude that the evidence is legally and factually sufficient to support
the jury’s finding that Dewbre impersonated a public servant in violation of the
Texas Penal Code. Tex. Penal Code Ann. § 37.11(a)(1). We therefore affirm the
judgment of the trial court.
 
                                                             Jane Bland
                                                             Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.
Do not publish. See Tex. R. App. P. 47.2(b).