**Opinion issued April 16, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-24-00859-CV**

**NO. 01-24-00860-CV**

———————————

**IN THE MATTER OF Q.W.**

---

**On Appeal from the 314th District Court**
**Harris County, Texas**
**Trial Court Case Nos. 2022-01412J and 2022-01413J**

---

**MEMORANDUM OPINION**

This is an appeal from the Harris County Juvenile Court's order revoking Appellant's probation for aggravated robbery and sentencing him to seven years in the Texas Juvenile Justice Department. On appeal, Appellant argues (1) the evidence is legally and factually insufficient to prove he violated the terms of his probation,

and (2) the juvenile court abused its discretion and denied him his right to due process by concluding he violated a rule of his probation related to possession of marijuana.

We affirm.

## Background[1]

In August 2022, the State filed two petitions in Harris County Juvenile Court alleging that Appellant—a juvenile born on September 7, 2006 ("Q.W.")—had engaged in delinquent conduct by committing aggravated robbery against two individuals. The State alleged that on May 4, 2022, Q.W. "did . . . unlawfully, while in the course of committing theft of property . . . and with intent to obtain and maintain control of the property, intentionally and knowingly threaten" the two complainants "and place them in fear of imminent bodily injury and death, and [Q.W.] did then and there use and exhibit a deadly weapon, to wit: A FIREARM."[2]

Pursuant to a plea agreement with the State, Q.W. pled true to two counts of delinquent conduct and was sentenced to ten years in the Texas Juvenile Justice Department ("TJJD") probated for six years. The "Determinate Sentencing

---

[1] To protect the identity of minor children, we refer to them by pseudonyms. *See* TEX. R. APP. P. 9.8(c)(2).

[2] The petitions were identical for each aggravated robbery except for the names of the complainants.

Judgment/Order" signed by the trial court lists the Rules of Probation and Special Instructions. The rules of Q.W.'s probation include the following:

- Rule R(A): "I will not violate any laws of the state including the Texas Compulsory Attendance Law."

- Rule R(D): "I will submit myself to random urine specimen analysis at a location and time specified by personnel of Harris County Juvenile Probation, reveal to said authorized personnel proof of any medication legally prescribed for me prior to submitting specimen. A urine positive for any controlled substances, dangerous drugs, or marijuana, not legally prescribed for me may result in adjudication of delinquent conduct or revocation or probation."

And under the "Special Instructions," the judgment states "No Weapons."

On May 9, 2023, the State filed a petition to modify disposition alleging Q.W. had violated multiple terms of his probation in both cases. In response, the juvenile court altered Q.W.'s placement, moving him from Harris County Leadership Academy—Mezzo to Harris County Leadership Academy–-Quest.

On August 28, 2023, the State filed a second petition to modify disposition, again alleging multiple probation violations in both cases. This time, the juvenile court responded by imposing a ten-year sentence in TJJD probated for seven years.

On May 15, 2024, the State filed a third petition to modify disposition in both cases, alleging Q.W. violated his probation by (1) failing to attend school as required

by Texas' compulsory attendance law,[3] (2) testing positive for marijuana, and (3) unlawfully carrying a weapon. Q.W. pled "not true" to the allegations.

The juvenile court held a hearing on October 8, 2024, and at the conclusion of the hearing, the court held Q.W. had violated the terms of his probation. After a short disposition hearing, the court sentenced Q.W. to be committed to TJJD for seven years.

This appeal ensued.

## The Hearing

Two witnesses testified during the delinquency phase of the hearing.

**Derrick Boxill[4]**

Boxill of the Harris County Juvenile Probation Department testified that according to the petitions to modify disposition, Q.W. violated the requirements of Rule R(A) that he comply with Texas' compulsory school attendance law. Boxill stated that Q.W., who missed twenty days of school in March and April 2024, had "attendance issues." Boxill also said that Q.W. violated the Rule R(D) probation condition not to consume or possess illicit drugs by testing positive for marijuana on

---

[3]    *See* TEX. EDUC. CODE § 25.085 (mandating compulsory school attendance); TEX. FAM. CODE § 65.003(a) (defining truant conduct as failing to attend school "on 10 or more days or parts of days within a six-month period in the same school year").

[4]    Boxill was established to be custodian of Q.W.'s probation record.

April 18, 2024. And Boxill testified that Q.W. was alleged to have violated state law by the unlawful carrying of a weapon on May 7, 2024.

Boxill testified that he did not have issues with Q.W. reporting to him, and that they were meeting every week at the time of the hearing. Boxill said Q.W. was not having behavioral issues at home or at school. He said Q.W.'s attendance issues had been "resolved," and he was "doing a lot better" as of the date of the hearing. Boxill testified that Q.W. was on track to graduate on time and that he was "motivated" to graduate and be successful. According to Boxill, Q.W. "demonstrated by going to school consistently this fall that he's willing to put the work in to be successful."

Boxill testified that Q.W. successfully completed some of his conditions of probation, such as writing a letter of apology. "His main focus right now is going to school, which we . . . are on track, and staying out of trouble." He testified that Q.W. tested negative for drugs on June 25, 2024.

**Deputy Joseph Campbell**

Deputy Campbell works for the violent crime unit in the Harris County Sheriff's Department. On May 6, 2024,[5] he was working an extra job at an apartment complex in Harris County, Texas when he saw a car entering the complex "at a high rate of speed." After parking at an angle next to Deputy Campbell's car, the driver

---

[5]     This was four months before Q.W.'s eighteenth birthday.

and the rear passenger jumped out of the car and began to run. But even before they got out, as soon as they opened the door, "you could smell an odor of marijuana in the vehicle." After the two men ran off, Deputy Campbell saw Q.W. in the front passenger seat.[6] He could not flee because Officer Campbell was standing by the front of the passenger seat.

As Deputy Campbell approached the car, he saw Q.W. move his feet so as to try to conceal something. According to Deputy Campbell, Q.W. "was trying to place his leg on top of something" in an effort to "conceal or hide something." Deputy Campbell asked Q.W. to exit the car based on the recklessness of the driving, the way the car was parked, the fact that the first two men ran from the car, and because "I could smell the odor of marijuana from the vehicle."

When Q.W. complied, Deputy Campbell saw "a handgun laying on the floorboard of the [car] that was not in a holster" and a black ski mask next to the gun. Both items were "on the floorboard where [Q.W.] was trying to conceal something with his foot." This indicted to Deputy Campbell "that [Q.W.] could've been doing any criminal activity at that time; [I] did not know." In addition, Deputy Campbell found a "plastic baggy" of marijuana on Q.W. Q.W. admitted he "just got through smoking marijuana." Deputy Campbell put Q.W. in the patrol car and searched the parked car. He found a "Sawzall" in the back right seat, which

---

[6] Deputy Campbell determined that Q.W. was not the owner of the car.

according to Deputy Campbell, "is usually commonly used to cut catalytic converters." Deputy Campbell also learned at that time that the gun on the floorboard had been stolen. Deputy Campbell testified that Q.W. was charged with the unlawful carrying of a weapon.

There was no other testimony during the delinquency hearing. One witness testified during the disposition hearing, after which the juvenile court announced the sentence.[7]

The court found that Q.W. violated Rule R(A) of his probation by failing to attend school and that he violated Rule R(D) of his probation by testing positive for marijuana. The court also found that Q.W. violated his probation because "on May 7th, he was arrested for the alleged offense of unlawful carrying of a weapon, a handgun." At the conclusion of the disposition phase of the hearing, the court made the required findings and ordered Q.W. to be committed to TJJD for a period of seven years.

**Sufficiency of Evidence**

In his first issue, Q.W. argues the evidence is legally and factually insufficient to prove he violated the terms of his probation.

---

[7] Because the terms of the sentence are not contested, and the appeal is limited to the finding that Q.W. violated the terms of his probation, we do not address the disposition portion of the hearing.

Hearings to modify disposition are governed by Section 54.05 of the Texas Family Code. Relevant to this appeal, Section 54.05 states:

> If, after conducting a hearing to modify disposition without a jury, the court finds by a preponderance of the evidence that a child violated a reasonable and lawful condition of probation . . . the court may modify the disposition to commit the child to the Texas Juvenile Justice Department . . . for a term that does not exceed the original sentence assessed by the court or jury.

TEX. FAM. CODE § 54.05(j) (internal citations omitted).

## A. Standard of Review

Juvenile courts enjoy broad discretion in determining whether to modify the disposition of a juvenile who is found to have engaged in delinquent conduct. *In re D.M.*, No. 01-23-00175-CV, 2025 WL 409051, at *2 (Tex. App.—Houston [1st Dist.] Feb. 6, 2025, no pet.) (mem. op.) (citing *In re K.H.*, 682 S.W.3d 567, 575 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). We review a juvenile court's determination in modifying disposition for abuse of discretion. *In re J.P.*, 136 S.W.3d 629, 632 (Tex. 2004). The court abuses its discretion if it acts "arbitrarily, unreasonably, or without reference to guiding rules or principles." *In re D.M.*, 2025 WL 409051, at *3 (citing *In re K.H.*, 682 S.W.3d at 575). In our review, we consider the entire record to determine whether the trial court abused its discretion. *In re A.S.*, No. 05-13-01022-CV, 2013 WL 6405489, at *3 (Tex. App.—Dallas Dec. 5, 2013, no pet.) (mem. op.).

In a legal sufficiency review, "favorable evidence is considered if a reasonable and fair-minded factfinder could consider such evidence, and evidence contrary to the court's finding is disregarded unless a reasonable and fair-minded factfinder could not disregard it." *In re D.M.*, 2025 WL 409051, at *3 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005)). In a factual sufficiency review, "we consider and weigh all the evidence, and will set aside the judgment only if the findings are so weak or so against the great weight and preponderance of the evidence as to be clearly unjust." *Id.* (citing *In re K.H.*, 682 S.W.3d at 575).

Finally, we note that "[a] violation of one condition of probation is sufficient to support a trial court's order modifying a juvenile's disposition." *In re C.B.J.*, No. 10-03-00008-CV, 2004 WL 1588274, at *12 (Tex. App.—Waco July 14, 2004, no pet.) (mem. op.) (quoting *In re C.O.*, No. 04-01-00630-CV, 2002 WL 562184, at *5–6 (Tex. App.—San Antonio Apr. 17, 2002, no pet.) (not designated for publication); *see also In re L.M.P.*, No. 07-23-00104-CV, 2023 WL 5663092, at *1 (Tex. App.—Amarillo Aug. 31, 2023, no pet.) (mem. op.) ("A violation of a single condition of probation can be sufficient to modify a juvenile's disposition and send the juvenile to TJJD.") (citing TEX. FAM. CODE 54.05(f)).

B.    **New Law Violation**

The State's third petitions to modify disposition state that Q.W. was arrested on May 7, 2024 "for the alleged offense of Unlawful Carrying Weapon – Handgun

– misdemeanor." Section 46.02 of the Texas Penal Code, titled "Unlawful Carrying Weapons," provides that a person commits an offense if the person "(1) intentionally, knowingly, or recklessly carries on or about his or her person a handgun," (2) "at the time of the offense [the person] is younger than 21 years of age," and (3) the person is not "inside of . . . a motor vehicle . . . that is owned by the person or under the person's control." TEX. PENAL CODE § 46.02(a).[8]

The juvenile court held that Q.W. violated his probation because "he was arrested for the alleged offense of unlawful carrying of a weapon, a handgun." Q.W. complains the evidence is legally insufficient to sustain the trial court's determination that he violated his probation by violating a state law—namely, the unlawful carrying of a weapon.

Q.W.'s argument on appeal focuses on whether the car in which he was traveling and where the police found the handgun was under his control. He argues the State did not "present evidence that Q.W. was not in a vehicle subject to his control as required by [Section 46.02]." In support of his argument, he relies on *Chiarini v. State*, 407 S.W.3d 922 (Tex. App.—Dallas 2014), *aff'd*, 422 S.W.3d 318

---

[8]    *See Contreras v. State*, 853 S.W.2d 694, 696 (Tex. App.—Houston [1st Dist.] 1993, no pet.) ("When applied to persons occupying vehicles, the phrase 'on or about the person' [in Section 46.02] has been expanded to include the area near by, close at hand, convenient of access, and within such distance of the party so that, without materially changing his position, the party could get his hand on it.") (citing *Courtney v. State*, 424 S.W.2d 440, 441 (Tex. Crim. App. 1968)).

(Tex. Crim. App. 2014). In *Chiarini*, the court of appeals held that evidence that Chiarini was carrying a handgun in the common area of his condominium complex was legally insufficient to support his conviction under Section 46.02 because there was no evidence he was "not on his 'own premises.'" *Id.* at 923. The court concluded the State was required to prove Chiarini was "not on his own premises or premises under his control." *Id.* at 925. The court held that because Chiarini, as an owner of a condominium unit, held an undivided interest in the complex's common elements, the only evidence before the jury was that he was on his "'own premises'—property in which he had an ownership interest." *Id.* at 926.

Q.W. also relies on *Batiste v. State*, 217 S.W.3d 74 (Tex. App.—Houston [1st Dist.] 2006, no pet). In *Batiste*, Batiste was riding in a car that was pulled over for speeding. *Id.* at 77. The officer who pulled the car over smelled burning marijuana emanating from the car. *Id.* The car's driver ("Haynes") initially told the officer the car belonged to Batiste. *Id.* at 78. Batiste told police that he "was using" the car, and he never denied owning it. *Id.* At trial, Haynes testified that Batiste told police the car belonged to a friend ("Fruellem"). *Id.* Fruellem testified that the car belonged to him and that the car's registration was in his name. *Id.* Fruellem testified that he had the car dropped off at Batiste's house the day of the traffic stop because Batiste was interested in buying it. *Id*. at 79.

On appeal, this Court held that while it was "unclear whether Batiste actually owned the vehicle, viewed in a light most favorable to the prosecution, the evidence indicate[d] that Batiste was in care, custody, and control of the vehicle before and at the time of the incident." *Id.* at 80. We stated that the officer who performed the traffic stop ("Robinson") testified that Haynes told him the vehicle belonged to Batiste, and another officer ("Jackson") from the traffic stop testified that Batiste told him the vehicle was his. We further noted that:

> Robinson further testified that Batiste never denied ownership of the vehicle. In addition, Haynes testified that she asked Batiste if she could drive the vehicle that evening, and Fruellem testified that he had had the car delivered to Batiste's house so Batiste could drive it to determine if he wanted to purchase it. Batiste contends the car was registered to Fruellem, and therefore that Fruellem controlled the vehicle. Jackson and Robinson testified, however, that possession is a stronger indication of control than registration because cars are often registered under names other than their owner's name.

*Id.* at 80–81. Given this evidence, we held the record established that Batiste was in "care, custody, and control" of the vehicle before and at the time of the incident. *Id.* at 80.

We are not persuaded by *Chiarini* or *Batiste.* There is no evidence that suggests that the car Q.W. was traveling in was under his control. Q.W. was not driving the car when it pulled into the parking lot and parked next to Deputy Campbell's patrol car. The car was not registered to Q.W. and he did not own the car. Deputy Campbell testified that he spoke to the owner of the car, who did not

12

indicate Q.W. was the owner of the car.[9] Unlike in *Batiste*—where the car's owner testified that Batiste was in control of the car during the traffic stop—there was no testimony that established Q.W. was in control of the car when the handgun was recovered by the police.[10]

Considering the evidence in the light most favorable to the trial court's finding and disregarding evidence to the contrary, we hold there was legally sufficient evidence supporting the trial court's finding that Q.W. violated a condition of his probation by committing the offense of unlawfully carrying a weapon. And after considering and weighing all the evidence, we cannot conclude that the finding of the trial court is "so weak or so against the great weight and preponderance of the evidence as to be clearly unjust.

Because the violation of one condition of probation is sufficient to support a trial court's order modifying a juvenile's disposition, we need not address Q.W.'s challenge to the sufficiency of the trial court's determination that he violated any other term of his probation. *See In re P.E.C.*, 211 S.W.3d 368, 373 (Tex. App.—San Antonio 2006, no pet.) (explaining that violation of one condition of probation is

---

[9] There was no testimony that indicated Q.W. stole the car.

[10] *See generally Bryant v. State*, No. 05-19-00033-CR, 2020 WL 1815832, at *2 (Tex. App.—Dallas Apr. 10, 2020, no pet.) (mem. op., not designated for publication) (concluding evidence legally sufficient to support trial court's finding that appellant did not own or control vehicle even though purchaser of vehicle testified that she never used vehicle, gave it to appellant immediately upon purchase, and considered appellant vehicle's owner).

sufficient to support court's order modifying juvenile's disposition) (citing *In re S.G.V.*, No. 04–05–00605–CV, 2006 WL 923576 at *3 (Tex. App.—San Antonio April 5, 2006, no pet.) (mem. op.)).

We overrule Q.W.'s first issue.[11]

## Due Process

In his second issue, Q.W. argues the juvenile court abused its discretion and deprived Q.W. of his due process rights by finding that Q.W. violated Rule R(D). Q.W. argues that Rule R(D) requires him to submit to random urine analysis and to advise the probation department of legally prescribed medicines before submitting the urine specimen. He argues, however, that Rule R(D) does not unequivocally state that probation will be revoked if he tests positive for marijuana.

We have already concluded that sufficient evidence supports the trial court's finding that Q.W. violated the terms of his probation by committing a new law violation. We thus need not address Q.W.'s due process argument, which concerns only the violation of Rule R(D) of his probation. We further note that Q.W. did not preserve his argument for appeal. Q.W. did not make a due process argument during the hearing on the motion to modify, and the record does not indicate he filed a motion for new trial raising the issue. It is well-settled that due process arguments

---

[11] Q.W. did not argue on appeal that any other provisions of Section 46.02 were not satisfied.

generally must be preserved in the trial court. *In re C.S.*, 198 S.W.3d 855, 856–57 (Tex. App.—Dallas 2006, no pet.) ("Almost all trial error, even constitutional error, is waived if appellant fails to object to the error at trial.") (citing *Aldrich v. State*, 104 S.W.3d 890, 894 (Tex. Crim. App. 2003)); *see also In re P.L.*, 106 S.W.3d 334, 336 (Tex. App.—Dallas 2003, no pet.) (holding juvenile appellant who failed to make due process objection during disposition hearing or motion for new trial did not preserve due process argument for appeal).[12]

We overrule Q.W.'s second issue.

## Conclusion

We affirm the juvenile court's orders revoking Q.W.'s probation.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.

---

[12] *See also* TEX. R. APP. P. 33.1(a) (stating complaint only preserved for appellate review if objected to in trial court and trial court ruled on objection).