**Opinion issued October 22, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00604-CR

———————————

**HUMBERTO MOLINA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court No. 6**
**Tarrant County, Texas**
**Trial Court Case No. 1516719**

---

## MEMORANDUM OPINION[1]

Humberto Molina was convicted of possession of less than two ounces (the

exact quantity was .14 ounce) of marijuana found in his truck during a traffic stop.

---

[1] The Texas Supreme Court transferred this case from the Second Court of Appeals to this Court. We are unaware of any relevant, substantive differences in law on the topic of this appeal between these two intermediate appellate court jurisdictions.

The trial evidence established that it was worth about $6. At his trial, the State spent a great deal of time discussing the significantly larger amount of contraband it attributed to Molina's passenger, suggesting two handguns found in the vehicle were there to protect a "drug investment," and arguing Molina had to have known about the $6 in marijuana given how much contraband his passenger had, all the while acknowledging that none of the passenger's contraband belonged to Molina. Molina objected to the admissibility of evidence of the passenger's contraband on multiple grounds, and the trial court overruled his objections.

In four issues, Molina contends the trial court abused its discretion in admitting evidence of contraband the State conceded belonged to his passenger. Concluding that the probative value of the evidence of the passenger's contraband was significantly outweighed by the danger of unfair prejudice, we conclude the trial court abused its discretion in admitting the evidence. We further conclude that the admission affected Molina's substantial rights and warrant reversal.

## Background

The Fort Worth police were positioned outside a house, waiting for a known fugitive to leave. They intended to follow him until he committed a traffic violation, engage him to confirm his identity, and then arrest him. That is not what happened. Instead, when they stopped the Toyota Tundra truck they were

following, they discovered the driver was Humberto Molina—someone different than the fugitive they were looking for.

As Sergeant B. Farmer with the Fort Worth Police Department approached the truck to confirm the driver's identity, Farmer smelled marijuana. Farmer determined that the odor of marijuana provided probable cause to search the truck unrelated to the original reason for the stop.

To conduct the search, Farmer detained Molina and his passenger, J. Soto. He then searched the backseat area of the truck, where he found a box and bag on the floorboard behind the passenger's seat and a backpack on the floorboard behind the driver's seat. Inside the box and bag on the passenger's side of the truck were a handgun, $211 in cash, and various baggies containing cocaine, marijuana, and prescription medication. The drugs were later analyzed and confirmed to be 30 grams of cocaine, 6.5 ounces of marijuana, and 88 Xanax pills.

Inside the backpack on the driver's side of the vehicle were a handgun, a magazine for a different weapon, and $1,714 in cash. There were no drugs in the backpack.

Farmer and accompanying officers then searched the front-seat area of the truck. In a built-in sunglasses holder near the rearview mirror, which was exactly in the middle of the front of the cab, the officers found a baggie containing .14 ounce of marijuana. The police also found three cell phones in the truck.

Having found drugs and weapons in the truck, Farmer arrested both Molina and Soto and searched their pockets. In Molina's pants pocket, Farmer found 1.2 grams of cocaine (worth about $100, according to trial evidence) and a wallet containing $682 in cash. In Soto's pocket, the officers found $2,553 in cash.

Farmer testified about any investigation done of evidence found in the truck. He stated that the police did not investigate to determine which phone(s) belonged to which occupant. Farmer simply noted that recovery of more cell phones than there were people was suspicious. Likewise, the police did not undertake fingerprint analysis or any other investigative measures to determine which weapon might have belonged to which person. Farmer was asked about this at trial:

Question: But you would agree with me that the government has the ability to make a call that takes a couple of minutes and then have somebody run to see if there's fingerprints on any of these guns . . .

Farmer: If they wanted to, yes, I guess they could.

\* \* \*

Question: Would have been a good idea, don't you think?

Farmer: Misdemeanor UCW [unlawfully carrying a weapon], normally if we get them on it, we just put them in jail for it.

Farmer explained how he charged the two men for various contraband found in the truck. He charged Soto with possession of the items found on the passenger's side of the truck based on their proximity to Soto and his furtive

4

movements during the traffic stop when he turned to the backseat and reached toward something behind him. Farmer charged Molina with possession of the items found in the sunglasses holder ($6 worth of marijuana) and on Molina's side of the truck (the handgun in the backpack).[2] Farmer noted that Molina did not make any furtive movements in any direction during the traffic stop and had been cooperative, but Molina was in possession of the truck, the backpack holding the gun was within Molina's reach, and, in Farmer's view, the sunglasses holder generally would be used by a vehicle's driver. Farmer also noted that, during questioning at the time of arrest, Molina admitted that he smokes marijuana, though not in his vehicle. Thus, Molina and Soto were not tried for joint possession of all contraband in the vehicle. The State divvied up the contraband as Farmer described. Each truck occupant was criminally charged for the contraband as divvied up,[3] and the two were tried separately.

In Molina's trial, the State "conceded" to the trial court and the jury that everything the officer assigned to Soto was, in fact, Soto's contraband. The State, nonetheless, sought to have all that contraband admitted in presenting its case

---

[2] As was explained at trial, possession of the handgun would only be a criminal offense if Molina was engaging in criminal activity while in possession, meaning if the $6 in marijuana was his, the possession of the otherwise legal handgun would be an offense as well.

[3] A grand jury no billed Molina on the possession charge for the cocaine removed from Molina's pants pocket. Molina, therefore, was only charged with possession of the .14 ounce of marijuana found in the sunglasses holder and the handgun in the backpack behind his driver's seat.

5

against Molina. The State explained the reason for admitting evidence of contraband it conceded belonged to Soto: "The State seeks to admit all of the items that were found in the truck to show that there was a motive and intent for this Defendant to have the [$6 in] marijuana [found in the sunglasses holder] as well as the firearm that he is charged with."

Molina objected that the evidence was irrelevant, impermissible character evidence and was more prejudicial than probative. The trial court overruled the objections and let in evidence of everything found in the truck except the cash inside Soto's pants pocket. In other words, the jury was told that the police officers recovered large quantities of cocaine, marijuana, and Xanax, as well as two handguns and three cell phones. They were told all the drugs on Soto's side of the truck, one of the guns, and any number of the cell phones belonged to Soto. And they were asked to conclude that the presence of Soto's contraband indicated that the small amount of marijuana in the sunglasses holder and the handgun behind the driver's seat were Molina's.

Throughout trial, the State discussed Soto's contraband, implied that Soto was a drug dealer, indicated that the guns were in the truck to protect a drug investment, and urged that Molina had to have known about Soto's contraband. This approach continued from the first witness through closing argument. At the end, the State urged the jury to convict Molina of possession of the single-use

6

amount of marijuana found in the sunglasses holder and, if it determined Molina illegally possessed drugs, to also convict Molina of possession of a weapon during a criminal act, which was charged as unlawful possession of a weapon.

The jury convicted Molina of possession of the marijuana in the sunglasses holder (charged as less than two ounces) but it found him not guilty of unlawful possession of a weapon. Molina was sentenced to fewer days than he had already served. Molina appeals and challenges the trial court's rulings permitting this evidence in his criminal trial.

## Standard of Review

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment. *Id.* We will uphold a trial court's ruling on the admissibility of evidence as long as the ruling was within the zone of reasonable disagreement. *Id.*; *Hung Phuoc Le v. State*, 479 S.W.3d 462, 469–70 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

## Relevance of Extraneous Offense Evidence

In his first issue, Molina contends the trial court erred in admitting into evidence the drugs, money, and weapon attributed to Soto because they were not

relevant to Molina's charges. When the State indicated it sought to admit the contraband it assigned to Soto and Molina argued for its exclusion, the items were considered as a set. Because they were not individually challenged at trial or on appeal, we will consider them as a set consistent with the parties' arguments and the trial court's analysis.

Rule 401 provides that evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. TEX. R. EVID. 401. Relevant evidence is admissible unless excluded by the constitution, a statute, or a rule; irrelevant evidence is not admissible. TEX. R. EVID. 402.

The amount of marijuana attributed to Molina was less than one-quarter of one ounce, and the marijuana attributed to Soto was approximately six and one-half ounces—more than 46 times as much. Officer Farmer testified that he could smell marijuana from outside the truck as he approached. He stated that the strong odor emitted from the container holding the 6.5 ounces. And he told the jury that the larger quantity of marijuana he smelled belonged to Soto.

From this evidence, the jury could infer that, if Farmer could smell Soto's marijuana from outside the enclosed cab of the truck, Molina must have been able to smell Soto's marijuana from within the enclosed truck. The presence of odorous contraband in a vehicle is one of the factors considered when analyzing whether a

8

defendant possessed other contraband found in the vehicle. *See Batiste v. State*, 217 S.W.3d 74, 80 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Thus, the presence of at least some of Soto's contraband was relevant. *See Rogers v. State*, 853 S.W.2d 29, 32 (Tex. Crim. App. 1993). It made a fact of consequence— knowing possession of the marijuana in the sunglasses holder—more or less probable than it would be without the evidence. *Id.*; TEX. R. EVID. 401.

Courts have held that the presence of a weapon and large sums of cash each have some relevance to the issue of knowing possession of illegal drugs because weapons are often used to protect contraband and money is collected on its sale. *See, e.g.*, *Hargrove v. State*, 211 S.W.3d 379, 386 (Tex. App.—San Antonio 2006, pet. ref'd) (considering presence of weapon as affirmative link); *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.) (viewing presence of weapons and cash as affirmative links); *Porter v. State*, 873 S.W.2d 729, 733 (Tex. App.—Dallas 1994, pet. ref'd) (viewing presence of weapons as affirmative link). While we are not necessarily convinced of the relevance of the weapon and cash under the facts of this case, given that the State conceded they belonged to Soto, we will not "superimpose [our] own judgment as to relevance over that of the trial court." *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). "Reasonable men may disagree whether in common experience a particular inference is available" and we will not disturb a trial court's ruling as long as it is

within the zone of reasonable disagreement. *Id.* Further, neither Molina nor the State argued relevance piecemeal. As stated, admissibility was argued globally.

We hold that it was within the zone of reasonable disagreement for the trial court to find that evidence of Soto's contraband was relevant. *See Rogers*, 853 at 32–33.

We overrule Molina's first issue.

## Molina's Arguments for Exclusion of Relevant Extraneous-Offence Evidence

In his second issue, Molina argues the trial court erred by admitting evidence of Soto's contraband because he requested notice if the State intended to use extraneous-offense evidence at trial, the State did not tell Molina pre-trial that it intended to admit Soto's contraband in Molina's criminal trial, and the State cannot avoid the notice requirement under a theory that Soto's contraband was "same transaction contextual evidence" for which no notice would have been required. [4, 5]

---

[4] Within this issue, Molina also argues the trial court erred by admitting evidence of the cocaine found in Molina's pants pocket, not because the State failed to give notice, but, because the notice was insufficient. Molina requested notice five months before trial. The State gave notice three days before trial that it intended to use the cocaine as evidence. Because Molina presents no evidence or argument how the three-day notice harmed him, we must conclude that any error was harmless. *See Hernandez v. State*, 176 S.W.3d 821, 825–26 (Tex. Crim. App. 2005) (holding that admission of extraneous-offense evidence without reasonable notice was harmless because appellant made no argument or showing that the lack of notice impacted his preparation or presentation of his defense); *see also McClenny v. State*, No. 02-08-00223-CR, 2009 WL 3246774, at *3 (Tex. App.— Fort Worth Oct. 8, 2009, pet. ref'd) (mem. op., not designated for publication) (concluding that admission of late-noticed evidence was harmless because

Rule 404(b) provides that evidence of "a crime, wrong, or other act is not admissible to prove a person's character" by showing that "on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). But such evidence may be admissible for "another purpose" or in certain contexts. TEX. R. EVID. 404(b)(2). The evidence may be admissible if presented to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* It may also be admissible if "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, or any one of them cannot be given without showing the other." *Rogers*, 853 S.W.2d at 33 (referring to "necessity" as yet one more "another purpose" under Rule 404(b)). In that circumstance, the extraneous-offense evidence is considered "same transaction contextual evidence" and is admissible as an exception to Rule 404(b) on the basis that the "evidence is *necessary* to the jury's understanding of the instant offense." *Id.* "Only if the facts and circumstances of the [charged] offense would make little

_____

appellant did not seek a continuance to adapt its trial strategy in light of the unexpected evidence, did not seem surprised by details of that evidence, and did not appear unprepared to address the evidence through cross-examination).

[5] The State did not argue the same-transaction exception at trial, but it does argue it on appeal. Because we are required to uphold a trial court's evidentiary ruling if correct, even if for a reason other than the one the trial court considered, there is no waiver of that potential basis for admission, and we will uphold the trial court's ruling on any other valid basis available. *See Martin*, 173 S.W.3d at 467; *Hung*, 479 S.W.3d at 470.

11

or no sense without also bringing in the same transaction contextual evidence, should the same transaction contextual evidence be admitted." *Id.* ("The reason for its admissibility 'is simply because in narrating the one it is impracticable to avoid describing the other, and not because the other has any evidential purpose.'" (quoting *Mayes v. State*, 816 S.W.2d 79, 86 n.4 (Tex. Crim. App. 1991))). Thus, the focus of the analysis for the "same transaction contextual evidence" is on the necessity of the evidence due to intertwined facts, not the evidence's relevance. *See id.*

Same transaction contextual evidence is an exception to Rule 404(b)'s exclusionary rule, but it also is an exception to that rule's reasonable-notice requirement. TEX. R. EVID. 404(b)(2) ("On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce [extraneous-offense] evidence—other than that arising in the same transaction—in its case-in-chief.").

We agree with the State that at least some part of the set of evidence attributed to Soto was same transaction contextual evidence, relieving the State of the need to provide pre-trial notice of its intention to use that evidence at trial. Officer Farmer testified he smelled marijuana as he approached Molina's truck, even though Molina's windows were fully closed. The odor of marijuana gave Farmer probable cause to search Molina's truck, and that search resulted in the

12

discovery of the .14 ounce of marijuana in the sunglasses holder and the handgun behind the driver's seat. It is at least arguable, meaning within the zone of reasonableness, that the evidence of the larger quantity of marijuana—which the State conceded did not belong to Molina—was part of the same transaction and admissible to explain to the jury the context of the search. *Cf. Batiste*, 217 S.W.3d at 84 (in context of analyzing ineffective-assistance-of-counsel claim for failure to challenge extraneous-offense evidence, stating that evidence likely would have been admissible because "the police officers' search of the vehicle, and discovery of the ecstasy in the center console of the vehicle, would have made little or no sense without their explanation that the discovery of the marihuana gave them a basis for the search").

Because the parties addressed Soto's extraneous-offense evidence globally at trial and on appeal, we do as well. The extraneous-offense evidence was admissible as same transaction contextual evidence; therefore, it was admissible without regard to Molina's notice request. We, therefore, overrule Molina's second issue.

Molina also challenges the admission of the Soto-contraband evidence under Rule 403, which provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

or needlessly presenting cumulative evidence." TEX. R. EVID. 403. The phrase, "unfair prejudice," refers to a tendency to suggest the jury make a decision on an improper basis, commonly, though not necessarily, an emotional one. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006) ("Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence.") The phrase, "confusion of the issues," refers to a tendency to confuse or distract the jury from the main issues in the case, by, for example, spending an inordinate amount of time on a non-central issue. *Id.*

This is a balancing test that takes into account the problems that admitting the challenged evidence might cause:

> Rule 403 recognizes that relevance alone does not ensure admissibility. A cost/benefit analysis must often be employed. Relevant evidence may be excluded if its probative value is not worth the problems that its admission may cause. The issue is whether the search for truth will be helped or hindered by the interjection of distracting, confusing, or emotionally charged evidence. In making this determination, the [trial] court must assess the probative value of the proferred item as well as the harmful consequences specified in Rule 403 that might flow from its admission.

*Id.* at 640–41 (quoting J. McLaughlin, et al., *Weinstein's Federal Evidence* § 403.02[1][a] at 403–06 (2006 rev.)).

In weighing these considerations, courts balance the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in

14

some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012); *see Gigliobianco*, 210 S.W.3d at 641 (rephrasing the second factor to analyze "any tendency of the evidence to suggest decision on an improper basis" or "to confuse or distract the jury from the main issues," and adding to the analysis "any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence"). "We review a trial court's ruling under Rule 403 of the Texas Rules of Evidence for an abuse of discretion." *Pawlak v. State*, 420 S.W.3d 807, 810 (Tex. Crim. App. 2013).

The odorous marijuana had probative value. Farmer testified the odor was strong enough for him to detect it from outside Molina's truck, even with the truck's windows closed. One could conclude, then, that it was strong enough for Molina to detect, which would support an inference that Molina must have been aware there were drugs in his truck, which, through another inference, might mean that he also uses drugs and possibly had some in his possession in the truck. *See Rogers*, 853 S.W.2d at 32–33 (possession of one type of controlled substance could arguably make it more probable that defendant would also be inclined to possess another type of illegal substance). On that basis, it was reasonable for the trial court to conclude the larger quantity of odorous marijuana had some probative

value. But, when weighing probativeness against the danger of unfair prejudice, we must take into account the State's concession that the larger quantity of marijuana as well as all other contraband for which Molina was not criminally prosecuted concededly belonged to Soto, not Molina.

Under the "affirmative links" analysis used to link a defendant to contraband not in his sole possession, a factfinder evaluates the various connections between a criminal defendant and both the charged contraband and the related items in his vicinity to assess whether those links establish that the criminal defendant's connection with the charged contraband was more than merely fortuitous. *Poindexter v. State*, 153 S.W.3d 402, 402 (Tex. Crim. App. 2005); *Hung v. State*, 479 S.W.3d 462, 467 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Extraneous offense evidence may be admissible under Rule 404(b) even if it tends to prove character conformity if it constitutes a recognized link to drug possession. *See Lamkin v. State*, No. 11-09-00057-CR, 2010 WL 3170647, at *3 (Tex. App.— Eastland Aug. 12, 2010, pet. ref'd). (mem. op., not designated for publication). Most links focus on the location of the charged contraband, how it was stored, the obviousness of its presence, the defendant's proximity to it, and the defendant's actions and demeanor that might indicate knowing possession of that contraband. *See Hung*, 479 S.W.3d at 467–68. The only link that focuses on something other than the criminally charged defendant and the contraband for which he is charged

is the link that inquires "whether other contraband or drug paraphernalia were present," which might support an inference that the criminal defendant knowingly possessed the contraband for which he has been charged. *See id.*

The State argued that Soto's contraband was necessary to establish links between Molina and the contraband for which he was charged—the $6 in marijuana—but it was relevant to only one link and that relevance was suspect because, under the State's theory, the "other contraband . . . present" definitively was not Molina's. Beyond the smell of Soto's marijuana and its presence in Molina's truck, the only probative feature of Soto's contraband was its ability to support an inference that Molina was associating with a drug dealer and a further inference that Molina was acting in accordance with a bad character trait by possessing drugs too. This is precisely the inference that the Rule 404(b) exclusionary rule seeks to address. *See Williams v. State*, 662 S.W.2d 344, 346 (Tex. Crim. App. 1983) ("The general rule is that an accused may not be tried . . . for being a criminal generally"); *see also Michelson v. United States*, 335 U.S. 469, 475–76 (1948) (in discussing federal Rule 404(b), stating the exclusionary rule is "rooted in the common-law tradition of disallowing the prosecution for using any evidence of a defendant's evil character to establish probability of guilt," not because character is irrelevant but, instead, because it 'weigh[s] too much with the

17

jury" and can "persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge").

Relatedly, there was enormous potential that the admission of the Soto-contraband evidence might impress the jury is an irrational but indelible way. Molina was charged with possession of less than one-quarter of one ounce of marijuana, worth about $6, that was found in a space equidistant from him and Soto. Evidence that Soto had large quantities of multiple drugs, a weapon (potentially to protect the drugs), and cash on hand tends to indicate that Soto is a drug dealer. Under the facts presented to the jury, Molina was driving around with Soto, an inferred drug dealer. This presents a not-small possibility that a jury would be overly swayed by its view of Soto as a drug dealer and Molina as one who associates with a drug dealer, when evaluating whether to hold Molina criminally responsible for the small amount of marijuana found between the two men. As we will discuss below, the harm moved from potential to palpable given the manner the State used this evidence.

At the beginning of the trial, it may have appeared that the State would not need a large amount of time to present evidence of other contraband in the truck. We note though, the State in fact spent a great deal of time on this issue. As will be discussed later, the presentation of that evidence consumed the majority of the trial.

18

Finally, the State's need for the evidence is suspect. Even without the Soto-contraband, the State successfully admitted evidence that, during the traffic stop, Molina indicated the truck was his and that he smokes marijuana. Molina denied being in possession of any drugs, but the police found cocaine in his pocket.[6] With this evidence, the State had little need to put on evidence of Soto's contraband to support its argument that Molina possessed the marijuana in the sunglasses case along with the cocaine in his pocket. By contrast, admission of the Soto-contraband had a significant danger of unfair prejudice, particularly if the State were to argue—as it did—that Soto was a drug dealer with drugs in his possession, Molina was associating with him, and the jury should hold Molina responsible for that.

Having considered the Rule 403 factors, including the probativeness of the Soto-contraband evidence, the harmful impact on the jury's analysis that could result from its admission, the time the State would need to present the extraneous-offense evidence, and the State's need for the evidence, and having considered these factors in light of the disparate quantities of drugs involved and the State's concession that the challenged evidence did not belong to the accused, we conclude that the probative value of the Soto-contraband evidence was greatly outweighed by the danger of unfair prejudice. We therefore consider harm.

---

[6] Molina does not appeal the admission of the cocaine evidence on Rule 403 grounds.

**Harm Analysis**

Error in the admission of evidence in violation of Rule 403 is analyzed to determine whether error affected the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). An error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the voir dire, the State's theory and any defensive theories, jury instructions, closing arguments, and whether the State emphasized the error. *Id.* at 355–56.

Our analysis is predominated by a combination of two factors: the State's theory and its emphasis on the evidence at trial. When the State argued for the

admission of the Soto-contraband evidence, it contended the evidence would be used "to show the Defendant has knowledge of the items he was possessing." How would evidence of Soto's comparatively large quantity of contraband and weapon establish that Molina knew he had a small amount of marijuana in his sunglasses holder or that the handgun behind his seat belonged to him? The State presented a consistent theme to make that connection, and it was based on Molina's association with a drug dealer.

The idea that Soto was a drug dealer was injected into the case with the State's first witness. Farmer highlighted that there were large quantities of drugs in the vehicle (while admitting they were not Molina's) combined with guns and cell phones. He testified that "people that tend to deal or run drugs tend to have more than one phone." He continued that, when there is "more than user amounts of narcotics, the people like to have guns in the car . . . so they can protect their investment and keeps their other competition from trying to rip them off and rob them. That's their livelihood so that they want to make sure they are getting their money." Here, we note that Molina was charged with the "user amount" of marijuana, not the "more than user amounts" of other drugs attributed to Soto; therefore, Farmer's statement was directed to Soto's potential status as a drug dealer protecting his investment with a weapon. Farmer's statement had no application to possession of $6 of marijuana.

21

When Molina objected to the relevance of people protecting drugs with guns, the State argued it was "seeking to show that there was the intent needed to prove this charge that the Defendant intended to protect those narcotics." But, again, Molina was charged with the single-use quantity of marijuana, not someone else's larger amount of contraband. And Farmer's statement provided no support for a theory that Molina would carry a handgun to protect $6 in marijuana.

Farmer then testified in detail about the various drugs Soto was carrying. The jury was told the cocaine weighed more than 30 grams and was worth $3,000. It was also told that one-tenth to one-twentieth of a gram is typically used each time a person consumes cocaine, which, if the jury decided to do the math, would mean Soto had enough cocaine in his possession for 300 to 600 drug transactions. The jury was told the 6.5 ounces of marijuana was worth $44 per ounce. Again, doing the math, that would tell the jury Soto had around $300 worth of marijuana in his possession. And the jury was told Molina was charged with possession of .14 ounce of marijuana, worth about $6 in comparison.

The State did not rest at the end of the first day of trial: it had another witness. The only State witness on the second day was a chemist called by the State to testify about the chemical analysis of the drugs recovered from Molina's truck. She detailed the weight of each of Soto's drug packets and what drug it was confirmed to be.

Throughout the trial, the State presented the jury with evidence that Soto had large quantities of various drugs in his possession and a weapon to protect his investment.[7] They placed Molina in the truck with Soto and alleged he had a gun to protect above-single-use-amounts of drugs, even though the State only accused Molina of possession of a single-use-amount of marijuana.

The State's closing argument removed whatever doubt might otherwise have existed regarding the harm that resulted from this evidence. The State began by listing all the items retrieved from the truck—two guns, 30 grams of cocaine, "eight ounces" of marijuana, three cell phones, and "thousands of dollars in cash." It reaffirmed that "most of this is not Mr. Molina's" and then explained it "brought all of these different drugs to show you that there is no way that [Molina] didn't know that all of this stuff was in here." The implication being that Molina would have known because he likely knew Soto was a drug dealer and he was choosing to associate with him. But that is exactly the inference that Rule 404(b) prohibits. *Cf. Lucky v. State*, No. 05-02-00108-CR, 2003 WL 40670, at *3–4 (Tex. App.—Dallas Jan. 6, 2003, no pet.) (mem. op., not designated for publication) (in a possession case, holding that evidence was impermissible character evidence properly excludable under Rule 404(b) when State presented evidence that a person with

---

[7] Molina tried to adapt his defense to the body of evidence admitted regarding drugs the State attributed to Soto. The State objected to Molina's question to Farmer about the State's investigation into Soto: "Objection, Your Honor, relevance . . . we are here on this Defendant."

whom the defendant had associated had been cited for the offense of loitering while manifesting an intent to buy or sell drugs).

Perhaps having doubts whether the jury had gotten the message that Soto was a drug dealer, the State made its theory more explicit, as it continued its closing argument, by suggesting to the jury it should wonder about Soto: "There are some questions that I'm sure you have in your head, like what is the relationship that Mr. Molina has with the passenger? Were they friends? Was that his drug dealer?" The question was raised and allowed to linger.

On rebuttal, the State did not relent. "We have got two guys, two bags, two guns, and a lot of stuff in this truck. . . . And I will freely admit, this—this was the other guy's. I don't know what the other guy's occupation is. But I know that [Molina] associated with him freely and drove his around in his vehicle." Again, this is clear propensity evidence that is highly prejudicial.

The theme of connecting Molina to a drug dealer continued. The State recalled for the jury Farmer's testimony that, "when people have narcotics, they protect those narcotics with firearms." The State reminded the jury, "He told you how much that stuff was worth. They add up." With this argument, the State relied on Soto's drugs to characterize both weapons as being in the truck to protect a drug investment, but the State never tied its argument to the charged offense of

possession of $6 in marijuana or presented evidence that Molina's possession of an otherwise legal weapon became illegal because of Soto's drugs.

As the State's closing reached the one-minute warning mark, the State asked the jury to punish Molina for Soto's contraband:

> You [decide] in that room when you deliberate as to what standard you are going to keep in this county. And your streets. This Defendant had all of this in his vehicle. He had all of it in his vehicle and you get to decide if you are going to hold him accountable for that.

On this record, given the State's concession that the contraband it repeatedly emphasized was not Molina's, the State's overt arguments that Soto was a drug dealer associate of Molina's, the State's argument implying that the large quantity of Soto's contraband meant that Molina was carrying a weapon to protect a drug dealer's investment, and the significant disparity between the amount of Soto's contraband (and inordinate amount of time the State spent discussing it) compared to the $6 in marijuana Molina was charged with, we cannot say that we are assured admission of this evidence had but a slight effect. We cannot say, with fair assurance, that the judgment was not substantially swayed by the error in admitting this evidence, given the significance the State placed on it. *See Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (discussing substantial-harm standard).

We acknowledge there was other evidence supporting an inference that Molina knowingly possessed the $6 in marijuana, including the cocaine found in his pocket and his admission to police during the traffic stop that he uses

25

marijuana. But, as the United States Supreme Court has noted, our substantial-harm inquiry cannot be merely whether there was enough evidence of guilt to support the judgment of conviction, apart from the error. *Kotteakos v. United States*, 328 U.S. 750, 764–65 (1946). Rather, the inquiry is "whether the error itself has substantial influence" or the reviewing court "is left in grave doubt" that it does, and, if the conclusion is that there is grave doubt, then "the conviction cannot stand." *Id.*; *see Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001) (quoting and applying *Kotteakos*).

The overwhelming majority of the trial was spent presenting Soto's contraband, leading the jury to conclude he was a drug dealer, emphasizing Molina's act of associating with a drug dealer and potentially using a gun to protect a drug dealer's investment, and calling for the jury to punish Molina for everything in his vehicle by convicting him of possession of $6 in marijuana found exactly in the middle of the truck, half way between Molina and the inferred drug dealer, all the while conceding that none of the drug-dealer-level contraband was Molina's. Because we have grave concerns that the admission of the Soto-contraband evidence in violation of Rule 403 had a significant effect on the outcome of the trial due to the State's emphasis on the evidence and the way it incorporated that evidence into its trial theme, we conclude the substantial-harm standard is satisfied.

Accordingly, we sustain Molina's third and fourth issue.

## Conclusion

We reverse the judgment of conviction and remand for additional proceedings consistent with this opinion.

Sarah Beth Landau
Justice

Panel consists of Justices Lloyd, Goodman, and Landau.

Do not publish. TEX. R. APP. P. 47.2(b).